[S.F. No. 23517. Apr. 26, 1978.]

EVELLE J. YOUNGER, as Attorney General, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
JAMES WILLIAM MACK, Real Party in Interest.

[S.F. No. 23597. Apr. 26, 1978.]

JAMES WILLIAM MACK, Petitioner, v.
EVELLE J. YOUNGER, as Attorney General, etc., Respondent.

106

---

**Counsel**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael Franchetti and G. Michael Gates, Deputy Attorneys General, for Petitioners and Respondent.

No appearance for Respondent Court.

Robert McDermand III and George K. Littlefield for Real Party in Interest and Petitioner.

Patrick R. Murphy, Public Defender (Contra Costa), Jeff C. Bradley, Deputy Public Defender, Leo Paoli, Arthur M. Sohcot, Maryjane Mulholland, Peter H. Meyers and Gordon S. Brownell as Amici Curiae on behalf of Real Party in Interest.

---

**Opinion**

**MOSK, J.**—These writ proceedings present the question whether James William Mack, the real party in interest in the first matter (S.F. 23517) and the petitioner in the second (S.F. 23597), is entitled to the destruction of certain official records pertaining to his conviction in 1972 of possession of marijuana in violation of former Health and Safety Code section 11530.[1] The cases require us to determine the applicability and validity of portions of two successive acts of the Legislature.

The first relevant statute, which took effect on January 1, 1976, was subdivision (b) of section 11361.5 (S.B. 95).[2] The measure authorized the

---

[1] All statutory references hereinafter are to the Health and Safety Code unless otherwise indicated.

[2] The statute was part of Senate Bill No. 95, 1975-1976 Regular Session, enacted as chapter 248, page 641, of the 1975 Statutes. For convenience, this legislation is referred to herein as S.B. 95, and citation to a section number followed by (S.B. 95) is a reference to the section as enacted thereby.

superior courts, on petition, to order the destruction of all records of arrests or convictions for possession of marijuana, held by any court or state or local agency and occurring prior to January 1, 1976. Pursuant thereto Mack filed a petition in respondent superior court on February 17, 1976, for an order of destruction of the records of his 1972 conviction. The court granted the petition on March 5, and ordered that the records in question be destroyed.[3]

The Attorney General moved to quash the order of destruction. After various continuances the court denied his motion by an order entered July 1, but stayed enforcement of the destruction order for 60 days. On August 30 the Attorney General filed a petition for original writ of mandate in this court. (S.F. 23517.) We retained jurisdiction, issued a temporary stay, and on November 18, 1976, granted an alternative writ.

Before oral argument could be heard, however, the Legislature changed the law. Effective January 1, 1977, section 11361.5, subdivision (b) (S.B. 95), was superseded by a section of the same number to which we shall hereinafter refer as subdivision (b) of section 11361.5 (A.B. 3050).[4] The new statute omits all authorization for destruction of marijuana arrest or conviction records by court order, and provides for such destruction by order of the Department of Justice upon application of the person affected.

On February 4, 1977, Mack applied to the Attorney General as head of the Department of Justice (Gov. Code, § 12510) for destruction of the records of his 1972 conviction pursuant to the new statute. The Attorney General refused to act, however, stating that such applications would not be processed until the constitutionality of the statutory provisions in question is determined by this court. Mack thereupon filed the second of the present two petitions for original writ of mandate in this court (S.F. 23597), seeking to compel the Attorney General to perform his duties under the new legislation. We granted an alternative writ and have consolidated both matters for opinion.

---

[3]The order was directed to the Sacramento police, the county sheriff, the district attorney, the public defender, the municipal court, the superior court, the official court reporters, the probation department, the Department of Corrections, the state Bureau of Identification, and the Department of Motor Vehicles.

[4]The statute was part of Assembly Bill No. 3050, 1975-1976 Regular Session, enacted as chapter 952 of the 1976 Statutes. For convenience, this legislation is referred to herein as A.B. 3050, and citation to a section number followed by (A.B. 3050) is a reference to the section as enacted thereby.

I

In S.F. 23517 the Attorney General principally contends that the records destruction order entered by respondent superior court on March 5, 1976, must be vacated because the statutory authority therefor, subdivision (b) of section 11361.5 (S.B. 95), violates the doctrine of the separation of powers. ■ We do not reach the constitutional question, however, because of the well settled rule that an action wholly dependent on statute abates if the statute is repealed without a saving clause before the judgment is final. (See, e.g., *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 829-831 [135 Cal.Rptr. 526, 558 P.2d 1], and cases cited; *Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 11-12 [97 P.2d 963]; *Krause* v. *Rarity* (1930) 210 Cal. 644, 652-653 [293 P. 62, 77 A.L.R. 1327].) " 'The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.' " (*Governing Board* v. *Mann* (1977) *supra,* 18 Cal.3d 819, 829, quoting from *Callet* v. *Alioto* (1930) 210 Cal. 65, 67-68 [290 P. 438].) Each element of the rule is present here.

■ First, the proceeding is wholly dependent on statute. ■ In *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859 [132 Cal.Rptr. 464, 553 P.2d 624], we held there is no common law right to the erasure or return of records of an arrest not followed by a conviction, and that the power to grant or withhold such a remedy rests exclusively with the Legislature. (*Id.,* at p. 876.) A fortiori the same is true of the remedy of obliteration or destruction of records of arrest or conviction for marijuana possession. None of the parties contends otherwise.

■ Second, the Legislature effectively repealed the statutory authority for the order here challenged when it enacted A.B. 3050, operative January 1, 1977. Although cast in terms of an "amendment" to section 11361.5 (S.B. 95), the new legislation completely eliminates the earlier procedure for records destruction by order of court; that procedure, accordingly, was in effect only for the calendar year 1976.

The Attorney General contends, however, that the repeal was a matter of form rather than substance. He emphasizes that the intent of the new legislation is the same as the old—to permit the destruction of certain records as a means of alleviating the adverse collateral effects of an arrest or conviction for marijuana possession. A.B. 3050, he asserts, merely substitutes the Department of Justice for the superior court as the "instrumentality" by which such destruction is to be ordered.

The argument misses the mark. We deal here with a question of jurisdiction: S.B. 95 vested respondent superior court with jurisdiction —to order destruction of records—where none existed before; Mack invoked such jurisdiction by his petition for a destruction order; and A.B. 3050 now removes that jurisdiction from respondent court. For present purposes it is irrelevant that A.B. 3050 also grants similar powers to an agency of the executive branch; the fact remains that the Legislature has revoked the statutory grant of jurisdiction for *this* proceeding, and has vested it in no other court.

The only legislative intent relevant in such circumstances would be a determination to save this proceeding from the ordinary effect of repeal illustrated by such cases as *Mann.* But no such intent appears: A.B. 3050 contains no express saving clause, and none is implied by contemporaneous legislation. (Cf. *County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 198 [195 P.2d 17]; *Traub* v. *Edwards* (1940) 38 Cal.App.2d 719, 721-722 [102 P.2d 463].)[5]

Finally, the order here challenged was not final at the time its statutory authorization was repealed: the Attorney General filed an appeal therefrom on July 16, 1976, and that appeal was still pending on January 1, 1977, when A.B. 3050 took effect.[6]

---

[5]The Attorney General contends that section 5 of A.B. 3050 "has the same effect" as a saving clause. Section 5 declares that "If any provision of subdivision (a) or (b) of Section 11361.5 of the Health and Safety Code, as they existed prior to January 1, 1977, is held invalid by a decision of a court of this state which is not, or is no longer, subject to appeal, then, to the extent logically mandated by such judicial decision, the same or any analogous provision of Section 11361.5 of the Health and Safety Code, as amended by this act [i.e., A.B. 3050], shall be inoperative on and after the date such judicial decision becomes final." We need not attempt at this time to determine either the validity or the reach of this curious provision. Whatever its effect, it does not deal with pending actions and is not a saving clause. At most it suggests that the underlying motive of the new legislation is similar to the old; but as explained above, the question is not motive but jurisdiction.

[6]The appeal was actually taken from the order entered July 1, 1976, denying the Attorney General's motion to quash the original destruction order of March 5, 1976. Mack contends the order of July 1 was not appealable, relying on the general rule that an appeal will not lie from a denial of a motion to vacate an appealable judgment or order on grounds which existed prior to entry of the latter. (*Litvinuk* v. *Litvinuk* (1945) 27 Cal.2d 38, 44 [162 P.2d 8].) In the case at bar, however, the original destruction order was entered wholly ex parte. The Attorney General's motion to quash was thus his first opportunity to litigate the matter at the trial level, and he should not be penalized for exercising that right. In such circumstances the courts have long recognized that the general rule is subject to an exception permitting the order or judgment to be challenged by a motion to vacate, followed by an appeal if that motion is denied. (See, e.g., *De la Montanya* v. *De la Montanya* (1896) 112 Cal. 101, 118-119 [44 P. 345]; *Estate of Baker*

We conclude in S.F. 23517 that respondent superior court no longer has jurisdiction to enforce its order for destruction of records pursuant to section 11361.5, subdivision (b) (S.B. 95), and the order must therefore be vacated.

## II

In S.F. 23597 petitioner Mack invokes the provisions of A.B. 3050, and seeks to compel the Attorney General to accept and act upon his application for destruction of records pursuant to the current version of section 11361.5, subdivision (b).

The application, presented to the Attorney General on February 4, 1977, was timely. The statute governs records of convictions "occurring prior to January 1, 1976," for the offense, inter alia, of violating "Section 11357 or a statutory predecessor thereof," and permits an application for destruction of such records "if two years or more have elapsed since the date of the conviction . . . ." The records here in issue pertain to a conviction dating from 1972, for the offense of possessing marijuana in violation of former section 11530, a statutory predecessor of section 11357.

The statute next prescribes that the application shall be submitted "upon a form supplied by the Department of Justice" and accompanied by a fee to defray costs, not to exceed $37.50. Mack tendered payment in the statutory amount, but made his application by letter of counsel rather than on an official form of the Department of Justice. In declining to process the application, however, the department acknowledged that no such forms had been issued pending a court decision on the constitutionality of the statute.[7]

The application thus complied with the procedural prerequisites to relief. "Upon receipt of a sufficient application," the statute then declares, "the Department of Justice shall destroy records of the department, if any, pertaining to such arrest or conviction in the manner prescribed by subdivision (c) and shall notify the Federal Bureau of

(1915) 170 Cal. 578, 582-584 [150 P. 989]; *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 388-389 [38 Cal.Rptr. 693].)

[7]The statute also authorizes the Department of Justice to "request, but not require," appropriate fingerprint identification of the applicant. No such identification has been requested of Mack.

Investigation, the law enforcement agency which arrested the applicant, and, if the applicant was convicted, the probation department which investigated the applicant and the Department of Motor Vehicles, of the application. Each state or local agency receiving such a notice from the Department of Justice shall destroy records of such agency, if any, pertaining to the arrest or conviction specified in the notice, in the manner prescribed by subdivision (c)."[8]

Subdivision (c) directs that the foregoing destruction of records be accomplished by "permanent obliteration" of all entries on such records pertaining to the arrest or conviction in question, and that in each case "the record shall be prepared again so that it appears that the arrest or conviction never occurred." The subdivision further prescribes, "However, where (1) the only entries upon the record pertain to such arrest or conviction and (2) the record can be destroyed without necessarily effecting the destruction of other records, then the document constituting the record shall be physically destroyed."

The Attorney General primarily contends that the records destruction provision of subdivisions (b) and (c) of the statute unconstitutionally encroach on the powers of the executive branch of government. Before addressing that contention, however, it will be helpful to reduce the issue to its true proportions.

To begin with, the statute on its face is more limited than its predecessor.[9] The prior version commanded destruction of the pertinent records of "each court of this state, state agency, and local public agency" (§ 11361.5, subd. (b) (S.B. 95)). In the case at bar, for example, that provision permitted a destruction order directed to no less than 11 courts and agencies. (Fn. 3, *ante.*) The reach of the current statute is far more modest: it applies only to the Department of Justice and the arresting agency, and, in cases of conviction, to the probation department and the Department of Motor Vehicles.[10]

[8]The application itself, together with the department's notices to the respective agencies, must also be destroyed.

[9]The new legislation is slightly broader in one regard: it also applies to arrests or convictions for three marijuana-related misdemeanors: former sections 11364 (possession of marijuana paraphernalia), 11365 (presence in a place where marijuana is used), and 11550 (being under the influence of marijuana). Insofar as they applied to marijuana, the cited statutes were all repealed as of January 1, 1976. (Stats. 1975, ch. 248, §§ 6-8, p. 645.)

[10]The statute also directs the Department of Justice to "notify" the Federal Bureau of Investigation, but of course it cannot compel that national agency to destroy any of its records.

Second, the new legislation is expressly declared inapplicable to three categories of records that were apparently within the purview of S.B. 95. Subdivision (d) of the present statute provides that "written transcriptions of oral testimony in court proceedings and published judicial appellate reports" are not subject to destruction, and extends that immunity to all records in any case in which "the defendant or a codefendant has filed a civil action against the peace officers or law enforcement jurisdiction which made the arrest or instituted the prosecution," for as long as that action has not been "finally . . . resolved."

Third, like all statutes, section 11361.5, subdivision (b) (A.B. 3050), is to be read with a view to effectuating legislative intent. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ■ As we noted in another connection, the purpose of this legislation is to minimize or eliminate the lingering social stigma flowing from what is now perceived to be a relatively minor form of criminal activity. (*Governing Board* v. *Mann* (1977) *supra,* 18 Cal.3d 819, 826-828.) The intent is to insure that once the offender has paid his prescribed debt to society, he not be further penalized by curtailment of his opportunities for rehabilitation, education, employment, licensing, and business or professional advancement. (See Sen. Select Com. on Control of Marijuana, Marijuana: Beyond Misunderstanding (1974) pp. 40-41; see also authorities cited in *Loder* v. *Municipal Court* (1976) *supra,* 17 Cal.3d 859, 868, fn. 5.)

■ Yet the debt must first be paid: we are satisfied the Legislature meant the statute to apply only to persons who have completed their punishment before seeking relief from the collateral effects of their convictions. Even though the statute is silent on the point, to hold otherwise would allow such defendants to escape or reduce that punishment by the device of compelling destruction of the very records on which it is based. ■ " 'It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " (*People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257], quoting from *Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 673-674 [56 Cal.Rptr. 265, 423 P.2d 193]; accord, *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845-846 [48 Cal.Rptr. 609, 409 P.2d 689], and cases cited.) ■ We conclude that section 11361.5, subdivision (b) (A.B. 3050), neither requires nor authorizes destruction of records of a conviction that remains subject to review on appeal, or is the basis of a

term of imprisonment that has not been fully served, or of a fine that has not been wholly paid, or of periods or conditions of parole or probation that have not been satisfactorily completed.[11]

 Fourth, the same respect for legislative intent leads us to declare the statute inapplicable to anonymous statistical data compiled, reported, or published by any public agency, even though such data may have been derived from records subject to destruction under this scheme. Regardless of its source, an arrest or conviction statistic that does not identify the individual concerned can obviously have no stigmatizing effect on his public or private life.

Finally, the Attorney General's claim that destruction of criminal records held by the Department of Justice is an issue of constitutional dimensions appears less than compelling when viewed in the light of his own practice of voluntarily engaging in similar records destruction under the California Criminal Record Purge Program. As we noted in *Loder* (17 Cal.3d at p. 872, fn. 13), "Under that program the department voluntarily 'purges'—by physically destroying—criminal records in its files after they have been retained for various periods of time."[12] According to an affidavit in the record, as of June 1976 2 million files had been reviewed pursuant to this program and 54 percent thereof were discarded. That the Attorney General thus countenances the destruction of over 1 million criminal records of the Department of Justice strongly suggests that his objection to the statute before us is less a question of constitutional principle than a simple disagreement over timing.[13]

---

[11]Identical· reasons preclude any construction of the statute that would require destruction of records of an arrest while the underlying charge remains outstanding.

[12]We listed as follows (*ibid.*) the particular retention periods then in use: "(1) records of arrests for minor traffic offenses, violations of local ordinances, public drunkenness, and disorderly conduct will not be retained at all; (2) records of misdemeanor arrests not resulting in conviction or later deemed to be 'detentions' will be retained for 5 years; (3) records of misdemeanor convictions and felony arrests will be retained for 7 years; and (4) records of felony convictions will be retained until the offender reaches age 70 and has not been arrested during the previous 10 years." With minor changes these standards remain in force today. (See Cal. Dept. of Justice, Criminal Record Purge Handbook (rev. 1976), *passim.*)

[13]For example, under the Attorney General's program the records of a misdemeanor marijuana arrest are destroyed after five years, and the records of a misdemeanor marijuana conviction or a felony marijuana arrest are destroyed after seven years; under section 11361.5, subdivision (b) (A.B. 3050), similar records may be destroyed after only two years.

## III

With the matter thus in proper perspective, we turn to the Attorney General's contention that section 11361.5, subdivision (b) (A.B. 3050), impermissibly impinges on the powers vested in the executive branch of government by the California Constitution. ▮ On its face, of course, the constitutional statement of the doctrine of the separation of powers (art. III, § 3) protects the executive branch from encroachment no less than the judicial branch. But the executive has invoked such protection less frequently than the courts, and the law on the topic remains sparse. The Attorney General cites two constitutional provisions assertedly in conflict with the records destruction statute.

▮ First he relies on article V, section 13, which sets forth the powers and duties of the Attorney General. In particular, he emphasizes the language of section 13 providing that "It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable."

It is contended that many of the functions authorized by section 13 will be seriously impaired if local law enforcement agencies and the Department of Justice are compelled to destroy their records "concerning the investigation, detection, prosecution, and punishment of crime." For example, in the discharge of his duty to see that the laws are adequately enforced, the Attorney General may deem it advisable to inquire into various aspects of marijuana crimes in California, such as their distribution by age, race, or sex, their recidivism rates, their penalties imposed, or their costs of enforcement. To achieve this purpose he may, pursuant to the express language of section 13, require criminal justice agencies to report such statistics to him. But the agencies rely on their records to compile such reports; and if they can be compelled to destroy their records pursuant to section 11361.5, it is argued, any statistics they furnish will necessarily be incomplete and hence inaccurate.

The contention fails in light of our conclusion herein (part II, *ante*) that the records destruction statute is inapplicable to such statistics. There is no claim that this data cannot be extracted and compiled during the two-year statutory delay before destruction of the underlying records. Indeed, even a six-month delay appears adequate for the purpose: we note that the Department of Justice annually presents a report to the Governor "on or before July 1st" that contains the statewide criminal statistics "of the preceding calendar year" (Pen. Code, § 13010, subd. (g); see also § 13012).[14]

■ The Attorney General next contends that an order to destroy the records of an arrest or conviction for marijuana possession is tantamount to a pardon for that offense and therefore infringes on the executive clemency power constitutionally vested in the Governor. (Cal. Const., art. V, § 8.) For several reasons the point is not well taken.

First, by the express wording of the cited provision of the Constitution executive clemency can be exercised in California only "after sentence."[15] But section 11361.5, subdivision (b) (A.B. 3050), applies not merely to records of convictions but also to records of "arrests not followed by conviction," i.e., followed instead by a prosecutorial decision not to file charges or by such dispositions as diversion, dismissal, discharge, acquittal, or mistrial. (See generally Pen. Code, § 11116.) There is obviously no possible conflict between destruction of the records of any such event and the executive clemency power defined in the Constitution.

Next, all commutations—and some pardons—are granted to persons who are still incarcerated or have not yet completed their terms or conditions of probation or parole. Because of our conclusion herein (part

---

[14]Because there is no impairment in fact of the Attorney General's power to require local law enforcement agencies to report relevant criminal statistics, the case is distinguishable from *State Board of Education* v. *Levit* (1959) 52 Cal.2d 441 [343 P.2d 8]. There the Constitution vested in the State Board of Education the power to adopt textbooks for the public schools. (Former art. IX, § 7, now § 7.5.) The Legislature, however, purported to prohibit by statute the spending of any funds to print two named textbooks selected by the board. This court invalidated the statute on the ground it was in direct and open conflict with the board's constitutional powers. For the reasons stated, no such conflict appears here.

[15]Article V, section 8, provides in relevant part that "Subject to application procedures provided by statute, the Governor, on conditions the Governor deems proper, may grant a reprieve, pardon, and commutation, after sentence, except in case of impeachment." (Cf. *Truchon* v. *Toomey* (1953) 116 Cal.App.2d 736, 743 [254 P.2d 638, 36 A.L.R.2d 1230] (construing former art. VII, § 1).)

II, *ante*) that such persons cannot invoke the records destruction statute, to that extent there is again no possible conflict with the power of executive clemency.

Finally, of course, an irreducible minimum remains: when a person who has fully completed his punishment obtains an order for the destruction of the records of a conviction for marijuana possession, as here, the effects of that order are similar to certain effects of a gubernatorial pardon for the same offense. But it does not automatically follow that the statute authorizing the order contravenes the doctrine of the separation of powers.

As we recently reiterated, that doctrine, "although enshrined in the Constitution and fundamental to the preservation of our civil liberties, 'does not mean that the three departments of our government are not in many respects mutually dependent.' " (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 191 [137 Cal.Rptr. 460, 561 P.2d 1148], quoting from *Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 442 [281 P. 1018, 66 A.L.R. 1507].) This court has often recognized that each department of government "for its own existence must in some degree exercise some of the functions of the others." (*Laisne* v. *Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831, 835 [123 P.2d 457].) The purpose of the doctrine is to prevent one branch of government from exercising the *complete* power constitutionally vested in another (*ibid.*); it is not intended to prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch. (*Parker* v. *Riley* (1941) 18 Cal.2d 83, 89-90 [113 P.2d 873, 134 A.L.R. 1405].)

These principles were recently applied in *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165 [141 Cal.Rptr. 383]. Effective July 1, 1977, the Legislature repealed the Indeterminate Sentence Law (ISL) and replaced it with the Uniform Determinate Sentencing Act of 1976 (UDSA). Penal Code section 1170.2 provides for retroactive application of the UDSA, thus resulting in a reduction in the terms of some prisoners convicted under the ISL. The statute was challenged on the ground it infringed on the Governor's constitutional power of commutation. (Art. V, § 8.) Rejecting the claim, the Court of Appeal reasoned (at p. 177) that the intent of section 1170.2 was not to commute existing sentences as an act of grace but to bring them in line with sentences under the new law, in furtherance of the UDSA's principal objective of making punishments uniform. The Court of Appeal concluded (at pp. 177-178)

that the effect of section 1170.2 in shortening certain terms is "purely incidental to the main legislative purpose," and hence the statute does not violate the separation of powers for the reasons recognized in *Laisne* and *Parker.*

In the case at bar similar reasoning compels a similar conclusion. Section 11361.5, subdivision (b) (A.B. 3050), does not authorize destruction of records of a conviction for marijuana possession as an act of grace, but as a means of implementing the Legislature's principal objective of reducing the adverse social and personal effects of that conviction which linger long after the prescribed punishment has been completed. Any infringement on the power of executive clemency is thus purely incidental to the main purpose of the statute—which is well within the province of the Legislature—and hence does not violate the separation of powers.

## IV

The remedy prayed for herein is appropriate. For the reasons stated, the Attorney General is under a clear and present duty by reason of his office to process the application for destruction of records presented to him by Mack on February 4, 1977, and Mack has a corresponding right to the performance of that duty. (Code Civ. Proc., § 1085; *Loder* v. *Municipal Court* (1976) *supra,* 17 Cal.3d 859, 863.) Mandate will therefore lie in the absence of an adequate remedy at law. Despite the pendency of the Attorney General's appeal (fn. 6, *ante*), we determined in issuing the alternative writ that no remedy other than mandate would be adequate in the circumstances of this case. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) And we exercise our original jurisdiction to grant that remedy (Cal. Const., art. VI, § 10) because we find that the issues are of great public importance and must be resolved promptly. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 402 [128 Cal.Rptr. 183, 546 P.2d 687], and cases cited.)

## V

The Attorney General also asks us to declare unconstitutional two other provisions of A.B. 3050: subdivision (a) of section 11361.5, and section 11361.7. In summary, the former makes it the duty of the courts and state and local agencies to destroy, after two years, any records in their custody of an arrest or conviction occurring on or after January 1,

1976, for marijuana possession; and the latter provides in essence that no record of an arrest or conviction subject to destruction under section 11361.5 shall be considered "accurate, relevant, timely, or complete for any purposes by any agency or person," and no public agency shall thereafter deny, limit, or revoke any license or privilege because of such an arrest or conviction.

It is earnestly urged that the court clerks and agency administrators of this state would welcome our advice as to the scope and validity of the foregoing statutes. We determined above (part IV, *ante*) that "the issues [of the scope and validity of § 11361.5, subd. (b) (A.B. 3050)] are of great public importance and must be resolved promptly." We do not doubt that the scope and validity of sections 11361.5, subdivision (a), and 11361.7 are of no less importance and have no less need of prompt resolution. But they are not "issues" in any case before us—in either of the present proceedings or in either of the two companion matters hereto. (*Court of Appeal* v. *Superior Court, post,* p. 121 [145 Cal.Rptr. 673, 577 P.2d 1013]; *Prople* v. *Chapman, post,* p. 124 [145 Cal.Rptr. 672, 577 P.2d 1012].) Subdivision (a) of section 11361.5 (A.B. 3050) is not at issue because each of these cases involves records of a conviction that occured *prior to January 1, 1976,* and hence is expressly exempted from its operation;[16] and section 11361.7 is not at issue because no party to any of these proceedings shows that any public agency presently refuses, to his detriment, to obey the terms of that statute.

In such circumstances the Attorney General's request must be denied under the authority of *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910 [83 Cal.Rptr. 670, 464 P.2d 126], a case indistinguishable on its facts. There the Attorney General sought a writ of mandate to obtain a determination by this court that a statute authorizing prejudgment attachments (former Code Civ. Proc., § 537) violated procedural due process under the rule of *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]. We pointed out that there was before us no debtor or creditor who was party to a prejudgment attachment of any kind and who sought relief with respect thereto. The Attorney General asserted, however, that the court clerks, sheriffs and marshals who issued and served writs of attachment wished to be advised as to the validity of the statute under *Sniadach*. We unanimously denied the request, explaining that "The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court. (See Cal.

---

[16]Subdivision (a) provides in relevant part: "The requirements of this subdivision shall not apply to records of any conviction occurring prior to January 1, 1976, or records of any arrest not followed by a conviction occurring prior to such date."

Const., art. III, § 1 [now § 3]; art. VI, §§ 10, 11; see also Gov. Code, § 68808 [now Pen. Code, § 1508]; *Hill* v. *Hill* (1947) 79 Cal.App.2d 368 [180 P.2d 378].)" (Fn. omitted; 1 Cal.3d at p. 912.) These rules of law and policy are equally binding on us today. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 875 [127 Cal.Rptr. 110, 544 P.2d 1310]; *People* v. *Fox* (1977) 73 Cal.App.3d 178, 182 [140 Cal.Rptr. 615]; *County of Sacramento* v. *Superior Court* (1974) 42 Cal.App.3d 135, 141 [116 Cal.Rptr. 602].)

Nor is there any merit to the Attorney General's attempt to bring his request within the well known doctrine that an issue that has become moot as to the particular parties may nevertheless be judicially resolved if it is of general public interest and is likely to recur. (See, e.g., *Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225], and cases cited.) In all such instances the question addressed was at one time a live issue in the case, and only became moot because of events occurring after the judicial process was initiated. But this is simply not a "mootness" case. For the reasons given above, the scope and validity of sections 11361.5, subdivision (a), and 11361.7 have never been viable issues in the proceedings before us, and the rule applied in *Green* is therefore inapposite.

We conclude that resolution of the questions now raised by the Attorney General with regard to the cited sections must await future proceedings in which they are truly justiciable issues. Any such claims, moreover, should first be litigated in the appropriate trial courts in light of the views expressed in this opinion.

■ In S.F. 23517, let a peremptory writ of mandate issue requiring respondent superior court to vacate its order for destruction of records. ■ In S.F. 23597, let a peremptory writ of mandate issue requiring respondent Attorney General to accept and act upon Mack's application for destruction of records in conformity with this opinion. In S.F. 23597 we reserve jurisdiction to determine Mack's motion for an award of attorneys' fees.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Sullivan, J.,* concurred.

On May 25, 1978, the judgment was modified to read as printed above.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.