[No. S020080. Feb. 27, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
VIENNA RAE HANSEL et al., Defendants and Respondents.

1214

**COUNSEL**

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, John D. Conley, Assistant District Attorney, James P. Cloninger, Joel R. Stone, Douglas H. Woodsmall and Kathleen M. Harper, Deputy District Attorneys, for Plaintiff and Appellant.

Rebecca Donaldson, Tonya E. Prescott and Estelle A. Schleicher, under appointments by the Supreme Court, for Defendants and Respondents.

Ronald Y. Butler, Public Defender (Orange), Carl C. Holmes, Chief Deputy Public Defender, Thomas Havlena and Kevin J. Phillips, Deputy Public Defenders, as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**PANELLI, J.**—When a defendant's motion to suppress evidence at the preliminary examination is denied and the defendant renews it in the superior court, are the People permitted to recall witnesses only when the defendant presents new evidence at the second hearing, under Penal Code section 1538.5, subdivision (i)?[1] We conclude that the People's right to recall witnesses is not so limited. We also conclude that the statute, so construed, does not violate the defendant's constitutional rights to due process and compulsory process.

## I. FACTS

Defendants and respondents Vienna Rae Hansel, Kevin Jules Berlin, and Loreen Louise Goetz were charged with various offenses relating to the possession of narcotics.[2] The case arose from a narcotics investigation in Orange County in 1988. Officers, who had a search warrant for defendants'

---

[1] All further statutory references are to the California Penal Code unless otherwise noted.

[2] All three defendants were charged with possession for sale of methamphetamine. (Health & Saf. Code, § 11378.) In addition, Hansel was charged with an enhancement pursuant to Penal Code section 1203.073, subdivision (b)(2) (possession for sale of 57 grams or more of

residence, had been warned that the front door was subject to video surveillance. As a means of approaching the residence undercover, the officer in charge, Christopher Elliott, had earlier instructed another investigator to telephone the house to say that flowers would be delivered that day.

On arriving at the residence, Officer Elliott, who was dressed in plain clothes and carrying flowers and a clipboard, knocked on the door. When Vienna Hansel answered the door, Elliott set down the flowers and clipboard he was carrying, announced to her that he was with the sheriff's department and had a search warrant, and demanded entry. There is some ambiguity on the apparently crucial point of whether Elliott repeated his announcement before he took hold of Hansel's arm and pulled her from the doorway, or whether he began to pull her during the course of his first announcement. At about the same time, the members of the raid team arrived at the front door, announced that they were with the sheriff's department and had a search warrant, and entered the house. Inside, they found crystal methamphetamine, cocaine, marijuana, and an Uzi-type weapon.

Defendants moved to suppress this evidence at the preliminary hearing, based on an alleged violation of section 1531, which provides that an officer may break open any part of a house to execute a warrant "if, after notice of his authority and purpose, he is refused admittance." Officer Elliott was the only prosecution witness at the hearing. The defense called no witnesses. The magistrate denied the suppression motion and held defendants to answer.

Defendants renewed their motion to suppress in a special hearing in the superior court, pursuant to section 1538.5, subdivision (i). The People attempted to recall Elliott "to clear up a few points."[3] However, the court ruled that the People could not recall Elliott, because it interpreted section 1538.5, subdivision (i) to allow the People to recall witnesses only if the defendants presented new evidence. ▆▆ ▬ ▬ The court granted the

---

a substance containing methamphetamine), with possession of cocaine (Health & Saf. Code, § 11350), and with possession for sale of marijuana (Health & Saf. Code, § 11359).

[3]Although the parties do not tell us what points Elliott might have been able to clarify, we surmise that he might have testified as to whether he pulled Hansel away from the door during the course of his first announcement, or whether she failed to respond to the first announcement, and he made a second announcement while pulling her away from the door. He could also have clarified the amount of time that elapsed between the raid team's announcement and their entry. Since an automatic weapon was found in the house, the Court of Appeal also suggests that inquiry into whether the officers reasonably feared for their safety might have proved helpful to the prosecution.

motion to suppress.[4] When the case was called to trial, the People announced that they were unable to proceed without the suppressed evidence, and the case was dismissed.[5]

The People subsequently appealed the dismissal. (§ 1238, subd. (a)(7).) The Court of Appeal affirmed the judgment of dismissal, construing section 1538.5, subdivision (i), to permit the People to recall witnesses at a renewal of the motion in the superior court only if the defendant introduces new evidence. Since the Court of Appeal based its decision on its interpretation of the section, it did not consider the constitutionality of the witness recall provision.

## II. THE MEANING OF PENAL CODE SECTION 1538.5, SUBDIVISION (i)

■■■ On its face, section 1538.5, subdivision (i) is clear and unambiguous. In pertinent part, the section provides: "If the motion [to suppress] was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence which could not reasonably have been presented at the preliminary hearing, *except that the people may recall witnesses who testified at the preliminary hearing.*" (Italics added.) The People contend that this language gives the prosecution an unequivocal right to recall witnesses at the special hearing. We agree.

The Court of Appeal, following dictum in *People* v. *Anderson* (1989) 210 Cal.App.3d 24, 28 [258 Cal.Rptr. 125], disagreed with this contention and construed the language of the section narrowly to permit the People to recall witnesses *only* "in opposition to evidence which a defendant presents in the superior court." The court concluded that the Legislature's purpose in adopting the language in question was "to allow the prosecution to rebut new evidence presented by the defense." (Assem. Com. on Public Safety, Rep. on the 1987 Amends., Assem. Bill No. 2328 (1985-1986 Reg. Sess.) Jan. 27, 1986, p. 3.)

---

[4]Hansel argues that we should not consider whether the superior court erred in refusing to permit the People to recall Elliott, because the People did not make a formal offer of proof. (Evid. Code, § 354.) However, the superior court's ruling made a formal offer of proof futile; therefore, the People may raise the issue on appeal. (Evid. Code, § 354, subd. (b); *People* v. *Whitsett* (1983) 149 Cal.App.3d 213, 219, fn. 1 [196 Cal.Rptr. 647]; 3 Witkin, Cal. Evidence (1986) Introduction of Evidence at Trial, § 2044, pp. 2002-2003.)

[5]The propriety of the search is not before us. The only question before us is whether the superior court erred in refusing to permit Elliott to be recalled.

The section does not on its face contain the limitation adopted by the Court of Appeal. Defendants[6] argue that such a limitation can be found if one reads the exception ("except that the people may recall witnesses who testified at the preliminary hearing") to apply only to the words "evidence which could not reasonably have been presented at the preliminary hearing," and not to modify the words "limited to the transcript of the preliminary hearing" as well. Under such an interpretation, the People's right to recall witnesses would be limited to those circumstances in which the defendant had presented new evidence at the superior court hearing. However, we believe defendants' argument lacks merit. The exception simply does not impose any limitations on the People's right to recall witnesses at the special hearing.

In our view, nothing in the language of section 1538.5, subdivision (i), is reasonably susceptible to the Court of Appeal's interpretation. ▮ Standard rules of construction require us to give the words in a statute "the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the legislature . . . . [Citations.]" (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]. See also *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708]; *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) ▮ The words of the section do not qualify the right of the People to recall witnesses at the special hearing. Instead, that right is "clear and unambiguous." (*Lungren* v. *Deukmejian, supra*, 45 Cal.3d at p. 735.) Therefore, we believe there is no need to construe the section or to look to external evidence of the intent of the Legislature.

However, even if it were necessary for us to look to the legislative intent, our conclusion would be the same. The legislative history supports our conclusion that the Legislature intended the People to be able to recall witnesses at the renewed suppression motion without limitation. In disagreeing with this conclusion, the Court of Appeal relied on a report prepared for the Assembly Committee on Public Safety (Assem. Com. on Public Safety, Rep. on the 1987 Amends., Assem. Bill No. 2328 (1985-1986 Reg. Sess.) Jan. 27, 1986, p. 3), which states that the purpose of allowing the prosecution to recall witnesses at the special hearing "would be to allow the prosecution to rebut new evidence presented by the defense." While this statement indicates one possible purpose for recalling a witness, it does not

---

[6]In discussing the arguments made by defendants, we also address arguments made on defendants' behalf by amicus curiae Orange County Public Defender.

clearly indicate an intent to *limit* the right of the prosecution to recall witnesses. Moreover, any support this statement might give to defendants' interpretation is considerably weakened by a report from the Senate Committee on the Judiciary, which states that "[t]he prosecution . . . has the right to recall witnesses who testified at the preliminary hearing. *The bill would not limit the testimony of the recalled prosecution witnesses to newly presented evidence.*" (Sen. Com. on the Judiciary, Rep. on Assembly Bill No. 2325 (1985-1986 Reg. Sess.) p. 4, italics added.) There is no suggestion in the Senate report that the testimony of the recalled witnesses would be limited to responding to newly presented defense evidence.

On the basis of this legislative history, it is difficult to conclude that the Legislature intended to permit the People to recall witnesses at the special hearing in the superior court only when the defense has presented new evidence.

Finally, defendants contend that a literal interpretation of section 1538.5, subdivision (i) would result in "absurd consequences which the Legislature did not intend," and that we should construe the statute to avoid this result. (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420], quoting *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) In amending the statute, the Legislature intended "to limit the number of hearings a defendant may receive on motions to suppress evidence." (Sen. Com. on the Judiciary, Rep. on Assem. Bill No. 2328 (1985-1986 Reg. Sess.) p. 3.) Defendants assert that acceptance of a literal reading would defeat the purpose of eliminating repeat testimony at the special hearing, and hence would contravene the purpose of the Legislature. We again disagree. As written, the section serves the legislative purpose by substantially reducing the total amount of time spent litigating suppression motions. Under our interpretation, a full de novo hearing is avoided, thus advancing the legislative goal behind section 1538.5, subdivision (i).

We therefore conclude that there is no justification or supportable basis for adopting the limitation suggested by the Court of Appeal. We understand the words of section 1538.5, subdivision (i), to mean what they say and say what they mean: the People have an unqualified right to recall witnesses at the special hearing.

### III. DUE PROCESS

██ Defendants argue that a literal reading of the statute violates due process by denying them the same substantive and procedural advantages

that the prosecution enjoys. Because the Court of Appeal construed section 1538.5, subdivision (i) to limit the right of the People to recall witnesses, the court did not consider the section's constitutionality. However, the trial court appears to have been motivated to adopt its interpretation by concern about the statute's constitutionality.[7] Although defendants did not challenge the constitutionality of the statute in their answer to the petition for review, the parties have briefed the question. We therefore address the issue in order to lay to rest any doubts about the section's constitutionality.

In analyzing this statute, we keep two principles in mind. ■ First, "it is our duty to uphold a statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity. [Citations.]" (*Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].) ■ Second, even where the right to due process has attached, we must inquire into what process is due, bearing in mind that "due process is flexible and calls for such procedural protections as the particular situation demands. . . . [N]ot all situations calling for procedural safeguards call for the same kind of procedure." (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494].)

■ The United States Supreme Court has described the right of the defendant in a criminal trial to due process as "the right to a fair opportunity to defend against the State's accusations." (*Chambers* v. *Mississippi* (1973) 410 U.S. 284, 294 [35 L.Ed.2d 297, 308, 93 S.Ct. 1038].) Similarly, "the spirit and the purpose" of the right to due process under the California Constitution is "to assure to everyone a full and ample opportunity to be heard before he can be deprived of his liberty or his property." (*In re Newbern* (1959) 175 Cal.App.2d 862, 865 [1 Cal.Rptr. 80, 78 A.L.R.2d 901].) However, the procedures at a suppression hearing before a judge need not be the same as those available to a defendant at trial. (See *United States* v. *Matlock* (1974) 415 U.S 164, 173-175 [39 L.Ed.2d 242, 250-252, 94 S.Ct. 988] [the same rules of evidence governing jury trials need not govern evidentiary hearings before a judge]; *McCray* v. *Illinois* (1967) 386 U.S. 300, 312-314 [18 L.Ed.2d 62, 71-73, 87 S.Ct. 1056] [the use of informers' out-of-court statements during a suppression hearing without disclosing informers' identity does not violate defendants' right to confrontation under the Sixth Amendment and due process clause].) Nonetheless, at a suppression hearing, the defendant must have a fair opportunity to litigate the claim. (See, e.g., *People* v. *Williams* (1988) 45 Cal.3d 1268, 1304, fn. 3 [248 Cal.Rptr. 834, 756 P.2d 221] [implicitly accepting the proposition that a

[7]Both the trial court and the Court of Appeal based their interpretation on *People* v. *Anderson, supra,* 210 Cal.App.3d at page 28. *Anderson*'s interpretation also appears to have been motivated by concerns about due process.

defendant has a due process right to a full and fair suppression hearing].) After a careful examination of the provisions of section 1538.5, subdivision (i), we conclude that the section does provide the defendant with a fair opportunity to be heard at the suppression hearings and, accordingly, does not deny due process.

We first note that the two suppression hearings available to the defendant should not be viewed in isolation from each other. This is clear from the limited scope of the evidence admissible at the special hearing in the superior court when the defendant has already made a suppression motion at the preliminary hearing. At the special hearing in the superior court, neither the prosecution nor the defendant may introduce new witnesses who could reasonably have testified at the preliminary hearing. If this second hearing were considered in isolation from defendants' motion at the preliminary hearing, then defendants' argument that they were denied due process might have merit.

However, when all the provisions for litigating the validity of a search or seizure are viewed as a whole, they clearly afford criminal defendants a fair opportunity to litigate their claims. Under the statutory authority, a defendant may bring the suppression motion either at the preliminary hearing or in the superior court, and may renew the motion in superior court if the preliminary hearing motion is unsuccessful, introducing any evidence that could not reasonably have been presented at the preliminary hearing. This procedure gives defendants every opportunity necessary to present their claims fully.

Defendants claim, however, that section 1538.5, subdivision (i), read literally, would deny due process because it would not give defendants a reciprocal right to recall witnesses at the superior court hearing. In other words, defendants argue that due process requires them to be given procedural opportunities that are the mirror image of those given to the prosecution. Defendants support this argument by analogizing to two cases dealing with defendants' rights to discovery, *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208] (*Wardius*), and *Evans* v. *Superior Court* (1974) 11 Cal.3d 617 [114 Cal.Rptr. 121, 522 P.2d 681] (*Evans*). In *Wardius*, state law barred the defendant from presenting an alibi defense because he had not complied with a notice-of-alibi statute. The Supreme Court reversed, holding that it violated due process to require a defendant to give pretrial notice of his alibi without affording him reciprocal discovery rights. In the court's view, it was "fundamentally unfair" to require a defendant to reveal the details of his own case while remaining subject to surprise at trial regarding the state's case. (*Wardius*, *supra*, 412 U.S. at p. 476 [37 L.Ed.2d at p. 88].)

*Evans* also concerned the ability of the defendant to receive a fair trial. There, we held that a defendant has a right to a pretrial lineup in cases in which eyewitness identification is a material issue and there is a reasonable likelihood of a mistaken identification. (*Evans, supra,* 11 Cal.3d at p. 625.) Reasoning that the state " 'may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses,' " we concluded that because the People are able to compel a lineup and use any favorable evidence, fairness required that the defendant be given a reciprocal right to discover and use lineup evidence. (*Id.* at p. 623, quoting *Wardius, supra,* 412 U.S. at pp. 474-475 [37 L.Ed.2d at pp. 87-88].)

The concerns that underlay the holdings in *Wardius* and *Evans* are not the same as those presented here. Both *Wardius* and *Evans* are founded on the right of the defendant to a fair trial; the United States Supreme Court is "particularly suspicious of state trial rules which provide nonreciprocal benefits to the State when the lack of reciprocity interferes with the defendant's ability to secure a fair trial." (*Wardius, supra,* 412 U.S. at p. 474, fn. 6 [37 L.Ed.2d at p. 87].) The reciprocal pretrial discovery required in *Wardius* and *Evans* helps defendants to present their defense. Without equal access to any favorable evidence, defendants would be placed at a disadvantage in relation to the state, and their ability either to demonstrate their own innocence or to avoid unfair surprise at trial would be reduced. The non-reciprocal procedures addressed in *Wardius* and *Evans,* therefore, directly implicate the right of the accused to a fair trial, even though the proceedings at issue occur before trial.

In contrast, the prosecution's statutory right to recall witnesses does not prevent defendants from either acquiring or presenting any evidence they may need to defend themselves effectively. Defendants may still receive a full and fair hearing on the admissibility of the evidence. There is nothing fundamentally unfair in failing to permit the defendant the same right to recall witnesses at the superior court hearing as is given the prosecution. (See *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1082 [2 Cal.Rptr.2d 160, 820 P.2d 262], holding that a limited exception to the general hearsay exclusionary rule favoring the prosecution was not fundamentally unfair to the defense.) Defendants' mere mechanical repetition of the word "reciprocity" is not enough to show that their right to a fair hearing would be violated.[8]

Defendants also argue that the plain meaning of section 1538.5, subdivision (i) violates due process because it impermissibly tilts "the balance of

---

[8] Other cases relied on by defendants are also distinguishable from the present case in that they implicate the ability of the defendant to defend himself effectively, thus calling into question his ability to receive a fair trial. (See, e.g., *Brady* v. *Maryland* (1963) 373 U.S. 83, 87

forces between the accused and his accuser" toward the prosecution. (*Wardius, supra,* 412 U.S. at p. 474 [37 L.Ed.2d at p. 87], citing *In re Winship* (1970) 397 U.S. 358, 361-364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) Thus, we must evaluate the balance between the parties in section 1538.5 motions. In seeking the suppression of evidence, the defendant may choose to litigate fully the validity of the search or seizure in question either at the preliminary hearing or in the superior court. The defendant has an advantage at the preliminary hearing since the section does not require the accused to give the prosecution notice of the motion or to present a formal written motion. At the second hearing in the superior court, the defendant may present a better researched and written motion. These procedural advantages given to the defendant may be offset to some extent by the People's ability to recall witnesses who testified at the preliminary hearing. However, the defendant is not really disadvantaged, since any recalled witnesses will be subject to cross-examination and, presumably, any inconsistencies in their testimony will be exposed. Additionally, the statute would permit the defendant to call witnesses to rebut any new evidence presented by the prosecution, since that rebuttal "could not reasonably have been presented at the preliminary hearing." (§ 1538.5, subd. (i).)

We believe that these procedures, taken as a whole, do not tilt the balance toward the state to any significant degree. Although the procedures available to the defendant do not precisely mirror those available to the prosecution, defendants are given a full and fair opportunity to present their claims at the suppression hearings. For these reasons, we conclude that the challenged provisions of section 1538.5, subdivision (i) do not violate due process.

## IV. COMPULSORY PROCESS

██ As another part of their constitutional attack, defendants contend that section 1538.5, subdivision (i) violates defendants' right to compulsory process under the Sixth and Fourteenth Amendments to the federal Constitution, and under article I, section 15, of the California Constitution. This contention is based on the fact that only the prosecution can recall witnesses at the special hearing.

In the present case, it is difficult to see how allowing prosecution witnesses to be recalled could have violated the defendants' right to compulsory process, since defendants did not attempt to call any witnesses either at the preliminary hearing or at the special hearing. Furthermore, even if defendants had called witnesses in the preliminary hearing whom they were not

---

[10 L.Ed.2d 215, 218, 83 S.Ct. 1194] [prosecutor's duty to disclose exculpatory evidence to the defense upon request]; and *Sheppard* v. *Maxwell* (1966) 384 U.S. 333, 362-363 [16 L.Ed.2d 600, 620-621, 86 S.Ct. 1507] [effect of trial and pretrial publicity].)

permitted to recall in the superior court, we are not persuaded that their right to compulsory process would have been violated.

As noted above, the two hearings on the suppression motion should be seen as part of a continuous process, rather than as isolated incidents. Within that process, defendants are able to call any witnesses they need. The statute neither prevents "whole categories of defense witnesses from testifying" (*Washington* v. *Texas* (1967) 388 U.S. 14, 22 [18 L.Ed.2d 1019, 1025, 87 S.Ct. 1920]), nor does it keep the defendant from having " 'a meaningful opportunity, at least as advantageous as that possessed by the prosecution, to establish the essential elements of his case.' " (*In re Martin* (1987) 44 Cal.3d 1, 29 [241 Cal.Rptr. 263, 744 P.2d 374], quoting Westen, *The Compulsory Process Clause* (1974) 73 Mich.L.Rev. 71, 95.) The prosecution's only procedural advantage is that it may recall witnesses to meet a renewed, and perhaps better articulated and argued, attack in the superior court. As stated earlier, if these recalled witnesses present new evidence, then the statute permits the defendants to call rebuttal witnesses, since their rebuttal "could not reasonably have been presented at the preliminary hearing." (§ 1538.5, subd. (i).) Viewing the procedures as a whole, it is difficult to conclude that the section does not provide defendants with a meaningful opportunity to establish that evidence was seized illegally and should be suppressed.

Thus, on the facts of this case, there has been no showing that defendants' right to compulsory process was or was likely to be offended.

V. CONCLUSION

Based on the foregoing, we conclude that the superior court erred in refusing to allow the People to recall Officer Elliott.

In order for error in excluding evidence to be reversible, it must appear to the reviewing court that the exclusion led to a miscarriage of justice. (Evid. Code, § 354.) In the present case, the Court of Appeal suggested that it would have been "quite simple to justify the police conduct," and indicated that further questioning on the exact events at the time of entry and on whether the officers reasonably feared for their safety could have been helpful to the prosecution. If the People had prevailed at the special hearing, the evidence which was suppressed would have been admissible and the case would have proceeded to trial. We therefore conclude that the standard justifying reversal has been met.

Accordingly, the judgment of the Court of Appeal is reversed. The cause is remanded to the Court of Appeal, which shall direct the superior court to conduct a suppression hearing in a manner consistent with this opinion.

Lucas, C. J., Mosk, J., Kennard J., Arabian, J., Baxter, J., and George, J., concurred.