[No. A045924. First Dist., Div. Five. Jan. 31, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ELAN ROSS, Defendant and Appellant.

880

## COUNSEL

Ronald E. Moe, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Linda James, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANING, J.**—Elan Ross appeals her conviction by plea of nolo contendere to possession of cocaine. (Health & Saf. Code, § 11350, subd. (a).)[1] She was placed on three years probation, subject to serving ninety days in jail and paying restitution fines. She contends the trial court erred in denying her motion to suppress evidence (Pen. Code, § 1538.5), and that the imposition of restitution fines was improper.

### FACTS

On the evening of September 30, 1988, Vallejo Police Officer Nathan Ketchum was patrolling the 800 block of Grant Street. He was aware of a letter sent by the landlord of an apartment complex on that block to his tenants stating that loitering by visitors was prohibited. "No Trespassing" signs were posted on the exterior of the buildings. Ketchum's nightly routine was to patrol the area, contact people he did not recognize as tenants, find out if they were visiting someone and, if they were not, instruct them to move on.

Ketchum observed a group of four or six people standing in front of the complex. He recognized two of them as residents. With the exception of

---

[1] Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

appellant, whom he did not recognize, the others in the group walked away as Ketchum approached. Ketchum asked appellant to come over and talk to him. After she complied with Ketchum's request to identify herself and said she lived in one of the apartments, he asked her if she had any confirming identification. Ketchum noted she had both hands in her coat pockets. Since she was some distance away, he asked her to walk toward him so he wouldn't have to yell. At that point, Ketchum thought appellant was free to leave. As she walked toward him she kept her hands in her pockets. After talking for two or three minutes about the posted trespassing signs, Ketchum asked her to remove her hands from her pockets out of concern for his safety or the possibility that she could be hiding something. Ketchum testified that it is his common practice when people come up to him with their hands in their pockets to ask them if they would mind taking their hands out of their pockets. As appellant withdrew her right hand she clenched her fist and threw something backward behind her.

Ketchum picked up two white chunky rocks wrapped in cellophane, later identified as cocaine, which he had seen fall from her hand. Appellant was arrested and a pat search turned up about $168 in currency. At the police station, she waived her *Miranda*[2] rights and told Ketchum the money was from selling narcotics, and that she had been selling cocaine outside the apartment complex for about an hour and a half.

In denying the motion to suppress the trial court stated, "I think up to the point of the voluntary act by the [appellant], she was strictly within her rights, and I think the investigation or the inquiries being made by Officer Ketchum were appropriate, and then the request he made likewise was appropriate. [¶] Why the [appellant] did what she did in pulling the contraband out of her pocket, there's no explanation for it. Certainly she wasn't asked or directed to do that and was not compelled to do it. So as far as I can see, it was a voluntary act on her part."

DISCUSSION

I

Appellant contends that her initial consensual encounter with Officer Ketchum escalated into an impermissible seizure. Specifically, she contends there were no facts constituting reasonable suspicion to justify Ketchum's questions after she identified herself.

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

■ On review of a motion to suppress, we defer to the trial court's factual findings, where supported by substantial evidence, but must independently assess, as questions of law, whether under the facts as found the challenged search and seizure conforms to the constitutional standard of reasonableness. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) ■ It is well established that in the absence of probable cause, police may stop and/or briefly detain a person if they have specific and articulable facts causing them to suspect that criminal activity has taken place, is taking place or is about to occur, and that the person they intend to stop or detain is involved in that activity. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868]; *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) ■ However, not all personal encounters between police and citizens involve a detention or "seizure" of the person. Seizure of the person occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554, fn. omitted [64 L.Ed.2d 497, 509, 100 S.Ct. 1870].) What constitutes a restraint on liberty such that a person would conclude that he is not free to leave varies with the particular police conduct at issue and the setting in which the conduct occurs. (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 571-572, 108 S.Ct. 1975, 1979].) The officer's state of mind is not relevant for resolution of this question except insofar as his overt actions would communicate that state of mind. (*People* v. *Franklin* (1987) 192 Cal.App.3d 935, 940 [237 Cal.Rptr. 840]; *People* v. *Bailey* (1985) 176 Cal.App.3d 402, 406 [222 Cal.Rptr. 235].)

■ In *INS* v. *Delgado* (1984) 466 U.S. 210, 216 [80 L.Ed.2d 247, 255, 104 S.Ct. 1758], the United States Supreme Court held that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a seizure. Merely asking for, rather than demanding, one's driver's license is permissible and does not amount to an intrusion upon any constitutionally protected interest. (*Florida* v. *Royer* (1983) 460 U.S. 491, 501 [75 L.Ed.2d 229, 238-239, 103 S.Ct. 1319]; *United States* v. *Mendenhall, supra*, 446 U.S. at p. 555 [64 L.Ed.2d at pp. 509-510]; *People* v. *Lopez* (1989) 212 Cal.App.3d 289, 292-293 [260 Cal.Rptr. 641]; *People* v. *Franklin, supra*, 192 Cal.App.3d at p. 941; *People* v. *Gonzales* (1985) 164 Cal.App.3d 1194, 1197 [211 Cal.Rptr. 74].) ■ Moreover, where a consensual encounter has been found, police may ask a citizen to remove his hands from his pockets and inquire into the contents of pockets. (*People* v. *Franklin, supra*, at p. 941; *People* v. *Epperson* (1986) 187 Cal.App.3d 115, 118-120 [232 Cal.Rptr. 16].) It is the mode or manner in which the request for identification or to remove one's hands is put to the citizen, and not the

nature of the request, that determines whether compliance was voluntary. (*People* v. *Franklin, supra*, 192 Cal.App.3d at p. 941.)

 In the instant case we conclude that no detention occurred. As appellant concedes, Officer Ketchum's asking her name and where she lived was a consensual encounter. His request for identification to verify the information given did not transform the encounter into a detention. Thereafter, while waiting for her to produce identification, the record reveals that Ketchum "asked" but did not demand that appellant remove her hands from her pockets. We conclude that such a request cannot be reasonably construed as a show of authority sufficient to transform the encounter into a detention. (See *People* v. *Franklin, supra*, 192 Cal.App.3d at pp. 941-942; *People* v. *Gonzales, supra*, 164 Cal.App.3d at p. 1197.) However, even if the request to remove her hands was a detention, Officer Ketchum's concern for his personal safety justified his conduct. Appellant's removal of the contraband from her pocket and discarding it in plain view was purely a voluntary action unrelated to Ketchum's conduct.

## II

 Appellant also contends that the imposition of restitution fines was improper and they must be stricken because she was not advised of the possibility of such fines when she entered her plea.

Following denial of her suppression motion, appellant changed her plea to nolo contendere pursuant to a plea bargain, to the lesser offense of possession of cocaine. At sentencing the court imposed restitution fines of $200 (Pen. Code, § 1203.04; restitution fund), $50 (§ 11372.5; lab fee) and $100 (§ 11372.7; drug program fee). However, there is no reference to restitution in the waiver form appellant executed, and the court did not advise her of any restitution requirement at the time appellant entered her plea. The People contend that since the restitution fines were referred to in the probation report, appellant's failure to object or move to withdraw the plea at the time of sentencing constitutes a waiver. Alternatively, they contend that if no waiver is found, appellant should be permitted to withdraw her plea and reenter the original plea after reinstatement of the original charge.

Appellant relies on *People* v. *Oberreuter* (1988) 204 Cal.App.3d 884, 888 [251 Cal.Rptr. 522], in which the Fourth District held, "[A] restitution fine, like any other penal consequence, may not be imposed on a plea-bargain participant where it was not included in the negotiated agreement." In that case, as in the instant one, the written waiver form was silent as to the possibility of any fines being imposed. (*Id.*, at pp. 888-889.) The court

concluded that because the defendant had completed a substantial portion of his prison term, permitting him to withdraw his guilty plea could not restore the status he enjoyed before sentencing. Thus, the court determined that it could modify the judgment by striking the restitution fine rather than remanding the case to the sentencing court. (*Id.*, at pp. 889-890.)

In *People* v. *Davis* (1988) 205 Cal.App.3d 1305, 1310 [252 Cal.Rptr. 924], the Fifth District disagreed with *Oberreuter* and held, "A failure to mention restitution, without more, in the course of advising a defendant of the consequences of his guilty plea, neither supports nor compels a finding that the parties have agreed that no restitution fine will be imposed." In *Davis*, the restitution fine was ordered pursuant to Penal Code section 1202.4, subdivision (a), which mandates imposition of a restitution fine upon conviction of a felony unless there are compelling and extraordinary reasons why no such fine should be imposed. (*Id.*, at p. 1309.) The court reasoned that because of the statutory mandate and the constitutional mandate implicit in the adoption of Proposition 8, it was improper to presume that failure to discuss restitution as part of a plea bargain prohibits such fine. *Davis* concluded that the "public policy represented by the mandatory fine " 'is too substantial to permit erosion' by reliance on mere silence in the course of a plea bargain. [Citation.]" (*Ibid.*)

*Davis* then ruled that the failure to advise the defendant of the fine did not invalidate his guilty plea. Citing *In re Yurko* (1974) 10 Cal.3d 857, 864 [112 Cal.Rptr. 513, 519 P.2d 561], *Davis* concluded that since imposition of a restitution fine is a direct consequence of a guilty plea, and advisement of the direct consequences of a plea is required, the trial court's failure to advise the defendant about the restitution fine before it accepted his guilty plea was error. (*People* v. *Davis, supra*, 205 Cal.App.3d at p. 1310.) Although the defendant contended he would not have accepted the plea with the fine, the Court of Appeal found the error harmless since the record showed that the prosecution's case against him was strong, that the defendant accepted the plea even though it reduced his maximum sentence exposure by only three years, and because the trial court imposed the minimum statutory fine possible. The court thus concluded the defendant was not entitled to withdraw his guilty plea.

*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449] require as a condition to accepting a plea of guilty or nolo contendere that the accused be advised of, and waive, the rights of self-incrimination, confrontation and jury trial. (*In re Tahl, supra*, at p. 132.) The accused must also be advised of the nature of the charges and the consequences of a conviction. (*Id.*, at p. 131.) This is a relatively simple task, and one which

imposes no great burden on the courts or prosecution.[3] The real question is whether the error should invalidate the plea, and this should be governed by the circumstances of the particular case—for instance, whether part of the sentence has already been served. (See, e.g., *People* v. *Oberreuter, supra*, 204 Cal.App.3d at pp. 889-890.)

 Both the state Constitution (Cal. Const., art. I, § 28, subd. (b)) and Penal Code section 1202.4 provide that imposition of the fine may be waived for "compelling and extraordinary" reasons. One example of a valid reason is the failure of the court and prosecution to advise the defendant entering a plea of the full measure of direct punishment which could be imposed—a restitution fine.

Consequently, we are inclined to follow *Oberreuter* and uphold the conviction, but order the fine stricken. The judgment is modified to strike the imposition of the fine. Except as so modified, the judgment is affirmed.

Low, P. J., and King, J., concurred.

---

[3] In the instant case appellant also filled out and signed a waiver of rights form, additionally initialling various paragraphs therein advising her of the rights being waived, the charges, and the consequences of her plea. The paragraph dealing with restitution was left blank and was not initialled.