[No. G020575. Fourth Dist., Div. Three. Dec. 4, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL EDWARD BENNETT, Defendant and Appellant.

## COUNSEL

Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, J.**—According to the country song, "The trouble with the truth is it's always the same ol' thing."[1] The Legislature—at least instinctively—recognized the wisdom of this truism and provided in section 1538.5 subdivision (i) of the Penal Code that a criminal defendant would be afforded only one evidentiary hearing in which to contest the legality of

---

[1] *The Trouble With the Truth*, written by Gary Nicholson (Sony Cross Keys Publishing Co., Inc. 1991) Four Sons Music (ASCAP), and recorded by Patty Loveless on her album of the same name.

searches and seizures. Today we hold that the immutability of truth and legislative fiat bar a second evidentiary hearing on such motions, except as provided in the section, even when the trial court concludes the record of the initial hearing is "sparse and inadequate."

Santa Ana police officers conducting a prostitution sweep saw Michael Edward Bennett talking to a prostitute who had just offered sex to an undercover officer for $40. Officer Michael Gonzales approached Bennett and asked, "Can I talk to you for a moment?" Bennett said, "Yes."

Remembering Bennett from a previous contact, Gonzales asked him if he was still on parole. When Bennett said he was, Gonzales asked whether he would be willing to wait in the patrol car while he "ran him for warrants." Again, Bennett said, "Yes." Gonzales described Bennett as "very cooperative," so the tone of the conversation was calm. No physical force was required or threatened; no handcuffs or other restraints were applied.

While Bennett remained in the car, Gonzales ran a computer check which revealed Bennett had failed to stay in contact with his parole officer, had been reported missing by his wife, and, because of a death in his family, might pose a danger to himself. In order to verify the computer information and not jeopardize the ongoing surveillance operation, Gonzales drove Bennett away from the scene and began attempts to verify these concerns. Within 30 minutes, officers succeeded in tracking down Rochester Jackson, Bennett's parole officer, and Jackson directed them over the phone to place Bennett under arrest for violating parole. Bennett was booked and placed in a holding cell where police searched him and found base cocaine in his shoe.

Before Bennett's preliminary hearing, his attorney filed a noticed motion under Penal Code section 1538.5, urging suppression of the cocaine on three grounds. First, counsel claimed her client was illegally detained during his initial contact with Gonzales. Second, she argued that, assuming the initial detention was valid at its inception, it was unduly prolonged. And finally, she described the search in the jail cell as unconstitutional because the base cocaine discovered in its course was tainted fruit of police misconduct.

Although these three grounds were raised in Bennett's moving papers, when evidence relevant to the suppression motion was finally presented at the preliminary hearing, Bennett's counsel never elicited facts relevant to the second or third ground. Instead, during argument, she expressly limited the scope of her claims. She explained, "I'm not contesting anything beyond the [initial] detention. The only thing that I'm contesting is that there are no specific articulable facts to show that Mr. Bennett was involved in criminal

activity at the point that he was detained."[2] Responding to counsel's representation, the magistrate pronounced the initial investigatory contact "justified" by Bennett's possible involvement in prostitution and then denied the motion to suppress.

After Bennett was arraigned on an information filed in the superior court, his counsel filed a new motion to suppress evidence under Penal Code section 1538.5, subdivision (i), advancing the same three contentions made in the motion filed before the preliminary hearing. In its written opposition, the prosecution objected to the second and third arguments, insisting they had been abandoned by the defense during the initial suppression hearing. Further, the prosecutor argued that however the court might characterize the initial contact between Bennett and the police, discovery of the base cocaine found on Bennett's person was the fruit of a valid arrest (see *New York* v. *Harris* (1990) 495 U.S. 14 [110 S.Ct. 1640, 109 L.Ed.2d 13]) and therefore the contraband was admissible as evidence in the case-in-chief against Bennett.

Despite the prosecutor's arguments and willingness to submit on the 26-page preliminary hearing transcript as contemplated by Penal Code section 1538.5, subdivision (i), the trial court informed the parties that, in its opinion, "what occurred at the preliminary hearing [was] sparse and inadequate." Observing "this is a serious case, it's a very serious case," carrying a potential sentence of 25 years to life, the court opined "that the prudent thing to do would be to continue [the motion] one week and then have an evidentiary hearing so that the facts can be fully presented."

As a result, a full evidentiary hearing was convened, and the trial court indicated the defense would be permitted to litigate all its concerns. In order to comply with the de novo procedure ordered by the trial court, the prosecutor recalled Officer Gonzales—who essentially repeated the testimony he had provided at the preliminary hearing, with some additional detail—then called Corporal Charles Jarusek of the Santa Ana Police Department, who had *not* been a witness at the preliminary hearing, to address a *Harvey-Madden*[3] issue raised by the defense in superior court. In connection with Corporal Jarusek's testimony, the prosecutor also introduced a certified copy of the original missing persons report filed by Barrett's wife.

---

[2]Trial counsel is, of course, in the best position to assess what tactical approach will provide the greatest chance of winning a suppression motion, and that is exactly what counsel did here. In light of our Supreme Court's recent explication in *People* v. *Reyes* (1998) 19 Cal.4th 743, 750-752 [80 Cal.Rptr.2d 734, 968 P.2d 445], of the limited nature of a parolee's Fourth Amendment rights, it is clear her decision to abandon the second and third arguments was tactically sound.

[3]See *People* v. *Harvey* (1958) 156 Cal.App.2d 516, 523-524 [319 P.2d 689]; *People* v. *Madden* (1970) 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971]; see also *Whiteley* v.

At the close of the evidentiary hearing, *more than three months later*, the trial court ruminated:

"Upon reflection I approached the matter in two ways because in essence the district attorney's office was going to submit on the transcript for a decision as to whether . . . the transcript supported the magistrate's denial of the motion.

"The court after reading the preliminary hearing transcript concluded that in the interest of justice additional evidence should be presented because I felt that facts presented were very general and nonspecific.

"So at the court's [insistence] Officer Gonzales was recalled and then [the] prosecution called Corporal [Jarusek] on the 1538.5.

"Given the testimony of Officer Gonzales and Corporal [Jarusek], I felt that the motion should be denied, that conduct of the police officer was appropriate, and that there was no reason to suppress any of the evidence.

"But since it was not the D.A.'s decision to present the additional evidence, I went back and reviewed the preliminary hearing transcript . . . , and after considering it from that perspective, I again felt that there was insufficient basis to set aside the magistrate's decision.

"As a result of that, the motion to suppress should be denied. And that's essentially where we are. So the motion is denied."

## I

Bennett contends his initial contact with Officer Gonzales amounted to an illegal detention which violated his constitutional right to be free from unreasonable seizure. We do not see it that way. In fact, we do not find the initial contact between Bennett and the police implicated the Fourth Amendment at all.[4]

By now, it is generally understood that " '[t]here is nothing in the Constitution which prevents a police [officer] from addressing questions to

---

*Warden* (1971) 401 U.S. 560, 568 [91 S.Ct. 1031, 1037, 28 L.Ed.2d 306]. While the current viability of the so-called *Harvey-Madden* rule is in doubt in the wake of the United States Supreme Court's decision in *Arizona* v. *Evans* (1995) 514 U.S. 1, 13-14 [115 S.Ct. 1185, 1192-1193, 131 L.Ed.2d 34, 46] (questioning whether the failure to present evidence of the source of a police report can be a basis for application of the exclusionary rule), we have no occasion to decide the issue here.

[4]We, of course, accord deference to the magistrate, and the trial court, with regard to matters of fact. However, we assess the legal implications of those facts de novo. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221]; *People* v. *Gallegos* (1997) 54 Cal.App.4th 252, 261-262 [62 Cal.Rptr.2d 666].)

anyone on the streets,' [citation]. Police officers enjoy 'the liberty (. . . possessed by every citizen) to address questions to other persons,' [citation], although 'ordinarily the person addressed has an equal right to ignore his interrogator and walk away.' [Citation.]" (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 553 [100 S.Ct. 1870, 1876, 64 L.Ed.2d 497], per Stewart and Rehnquist, JJ.) "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." (*Id.* at p. 554 [100 S.Ct. at p. 1877]; accord, *People* v. *Castaneda* (1995) 35 Cal.App.4th 1222, 1227 [42 Cal.Rptr.2d 18]; *People* v. *Clark* (1989) 212 Cal.App.3d 1233, 1237 [261 Cal.Rptr. 181]; *People* v. *Rosales* (1989) 211 Cal.App.3d 325, 330 [259 Cal.Rptr. 503].)

As the United States Supreme Court said in *Florida* v. *Bostick* (1991) 501 U.S. 429, 434 [111 S.Ct. 2382, 2386, 115 L.Ed.2d 389], "Our cases make it clear that a [Fourth Amendment] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' [citation] the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature . . . . '. . . Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a [person] may we conclude that a "seizure" has occurred.' " (*Ibid.*)

■ In the initial contact between Bennett and Officer Gonzales, nothing was done to restrain Bennett's liberty in any way. Instead, Gonzales approached Bennett and asked, "Can I talk to you for a moment?" Bennett replied, "Yes." When Gonzales inquired whether Bennett was on parole, Bennett again answered in the affirmative. When asked whether he would mind waiting in the back of the police car while Gonzales ran him for warrants, Bennett again agreed and, according to the testimony, was "very cooperative." Gonzales spoke in a polite, conversational tone and applied no physical or verbal force that might have caused a reasonable person to feel compelled to respond. From all appearances, Bennett's responses were all voluntarily given, and nothing was done by Gonzales to transmogrify the consensual tone of the conversation or stop Bennett from simply walking away.[5]

Under these circumstances, we find Bennett's initial contact with Officer Gonzales was a classic consensual encounter. And although the magistrate

---

[5]The mere fact Gonzales *might* and probably *would* have stopped Bennett from leaving had he chosen to do so is legally irrelevant. *That* did not happen. And, of course, any uncommunicated subjective motivation entertained by Gonzales has no bearing on our analysis. (*Scott*

concluded the facts "justified" the investigative contact made by Gonzales, the fact is, no justification was required. Gonzales was free to approach Bennett and to pose each of the questions he asked.[6] Bennett answered. If his decision to cooperate was a mistake, it was not one for which the rest of us should be penalized.[7]

## II

## A

Next, Bennett complains Gonzales detained him for an unreasonable time while awaiting instructions from Probation Officer Jackson to place him under arrest. We decline to resolve Bennett's claim because it was waived.[8]

It may or may not be true that the road to hell is paved with good intentions, but this case suggests that the road to procedural morass often is. This is a case in which pristine intentions ventured off the beaten path of

---

v. *United States* (1978) 436 U.S. 128, 138 [98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168] [mandating use of an exclusively objective standard to determine whether police conduct is constitutionally reasonable]; *Maryland* v. *Macon* (1985) 472 U.S. 463, 470-471 [105 S.Ct. 2778, 2782-2783, 86 L.Ed.2d 370] [same]; *Michigan* v. *Chesternut* (1988) 486 U.S. 567, 574 [108 S.Ct. 1975, 1979-1980, 100 L.Ed.2d 565] [same]; accord, *People* v. *Ross* (1990) 217 Cal.App.3d 879, 884 [265 Cal.Rptr. 921], disapproved on an unrelated ground in *People* v. *Walker* (1991) 54 Cal.3d 1013, 1022 [1 Cal.Rptr.2d 902, 819 P.2d 861] [officer's state of mind is irrelevant, "except insofar as [the officer's] overt actions would communicate that state of mind"]; *People* v. *Gonzales* (1989) 216 Cal.App.3d 1185, 1190, fn. 2 [265 Cal.Rptr. 507] [recognizing use of a subjective standard contravenes the mandate of article I, section 28, subdivision (d) of the California Constitution].)

[6]For an interesting discussion of the point, see Dunn, *It's Time to Flip Wilson: The Consensual Encounter as a Law Enforcement Investigative Tool v. "The Right to Be Left Alone"* (1992) 20 W. St. U. L.Rev. 47.

[7]An individual's decision to cooperate must merely be consensual; it need not be intelligent, i.e., wise, from the criminal's point of view. What Chief Justice Weintraub wrote for a unanimous New Jersey Supreme Court in the days of *Terry* v. *Ohio* (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] remains true today: "The case at hand involves, not the trial stage, but rather the detectional stage of law enforcement. . . . When the guilty go undetected, or, if detected, are nonetheless set free because plain evidence of guilt is suppressed, the price is exacted from what must be the first right of the individual, the right to be protected from criminal attack in his home, in his work, and in the streets. Government is constituted to provide law and order. The Bill of Rights must be understood in the light of that mission. [¶] There is no right to escape detection. There is no right to commit a perfect crime or to an equal opportunity to that end. The Constitution is not at all offended when a guilty man stubs his toe. On the contrary, it is decent to hope that he will. . . . [¶] . . . It is consonant with good morals, and the Constitution, to exploit a criminal's ignorance or stupidity in the detectional process. This must be so if Government is to succeed in its primary mission to live free from criminal attack." (*State* v. *McKnight* (1968) 52 N.J. 35 [243 A.2d 240, 250-251].)

[8]While we do not decide the issue, we note the delay was only 30 minutes. (Cf. *In re Carlos M.* (1990) 220 Cal.App.3d 372, 384-385 [269 Cal.Rptr. 447] [30-minute delay reasonable under the circumstances].)

statutory mandate and soon found themselves hip-deep in a swamp full of alligators.

Had the procedure outlined in Penal Code section 1538.5 been followed, we would have expected the case to have played out pretty simply. Bennett was charged with simple possession of cocaine. He was arrested for violating a specific term of his parole, and, so far as we know, he has never contended he was actually in compliance with that term or that probable cause for his arrest was lacking. Moreover, the prosecution has consistently maintained that discovery of the cocaine in Bennett's possession was the fruit of a lawful arrest and concomitantly lawful custody. The same argument won the day in *New York* v. *Harris, supra,* 495 U.S. 14, and it should have defined the presentation of this case in the superior court. It did not.

Instead, once the case was filed in the superior court, Bennett was permitted to raise and litigate each of the issues his counsel had not only failed to develop but had expressly waived during the initial motion to suppress. A hearing which is statutorily limited to review of a transcript in most instances grew into a death march that stretched over three months. We find this procedure contrary to the mandate of Penal Code section 1538.5, subdivision (i). But we conclude the trial court's ultimate decision to deny suppression was correct and therefore affirm the judgment.

## B

Since the Legislature amended Penal Code section 1538.5 in 1986, the answer to the question of "[w]hether the superior court judge should allow the parties to advance legal theories that were not litigated at the preliminary hearing [has been] uncertain." (Cal. Judges Benchbook: Search and Seizure (Cont.Ed.Bar 1991) § 1.55, p. 42.) This case demands an attempt at remedying that uncertainty.

We need not repeat the history of the 1986 amendments to Penal Code section 1538.5. The courts in *People* v. *Williams* (1989) 213 Cal.App.3d 1186 [262 Cal.Rptr. 303], *Anderson* v. *Superior Court* (1988) 206 Cal.App.3d 533 [253 Cal.Rptr. 651], and *People* v. *Ramsey* (1988) 203 Cal.App.3d 671 [250 Cal.Rptr. 309] have already ably elucidated it. Suffice it to say that, effective January 1, 1987, the section was amended "[t]o eliminate the 'duplicat[ive] litigation of issues and repeat testimony . . .'" that characterized the procedures governing suppression motions in the superior court before that time. (*Williams, supra,* at p. 1190.) The Legislature modified section 1538.5 primarily because it saw the need to conserve the sparse judicial resources available to handle the superior court's burgeoning

caseload and concluded it made sense to limit the number of evidentiary hearings available to defendants seeking suppression on Fourth Amendment grounds. (See *People* v. *Hansel* (1992) 1 Cal.4th 1211, 1218 [4 Cal.Rptr.2d 888, 824 P.2d 694].)

Thus, as amended, subdivision (i) of Penal Code section 1538.5 now provides, "If the motion was made at the preliminary hearing, *unless otherwise agreed to by all parties*, evidence presented at the special hearing [in the superior court] shall be limited to the transcript of the preliminary hearing and to evidence that could not reasonably have been presented at the preliminary hearing, except that the [P]eople may recall witnesses who testified at the preliminary hearing. If the [P]eople object to the presentation of evidence at the special hearing on the ground[] that the evidence could reasonably have been presented at the preliminary hearing, the defendant shall be entitled to an in camera hearing to determine that issue. The superior court shall base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate shall be binding on the superior court as to evidence or property not affected by evidence presented at the special hearing." (Italics added.)

■ This statutorily mandated procedure was not followed in this case. Instead, the trial court decided that the "interests of justice" required a second full-blown evidentiary hearing. Reckoning from that point until the day on which Bennett's motion to suppress was finally decided, more than three months passed, during which substantial time was devoted to a second evidentiary hearing. In addition, several other court appearances were made by the parties to arrange continuances and to provide the court additional oral argument. Each took the court away from other business. That is not at all what the Legislature had in mind when it amended Penal Code section 1538.5 to eliminate the defendant's "second bite" of the evidentiary apple.

■ Under Penal Code section 1538.5, subdivision (i) as amended, "[a] defendant is now entitled to only one full [evidentiary] hearing on his [or her] suppression motion. The factual findings of the magistrate . . . are binding on the superior court which, in effect, becomes a reviewing court drawing all inferences in favor of the magistrate's findings, where they are supported by substantial evidence. [Citations.]" (*People* v. *Williams, supra,* 213 Cal.App.3d at p. 1191.) The trial court has no statutory or inherent authority to enlarge the scope of the hearing on its own motion.

In 1991, the authors of the California Judges Benchbook observed that nothing on the face of the 1986 legislative amendments to Penal Code section 1538.5 "purports to restrict the grounds for making [a suppression]

motion in the superior court or to compel the parties to litigate all their theories at the preliminary hearing . . . ." (Cal. Judges Benchbook: Search and Seizure, *supra*, § 1.55, p. 43.) On the other hand, the authors recognized the argument "that allowing the parties to shift ground in superior court would seriously undercut the . . . provisions [in section 1538.5] that give binding effect to the magistrate's factual determinations." (*Ibid.*) They noted, "[I]f the court permits the raising of new theories, it will be under pressure also to permit new testimony in support of the theories. This would weaken the apparent objective of the [legislative] amendments to get away as much as possible from having two evidentiary hearings." (*Ibid.*) And so it was here.

 Once the trial court granted Bennett free rein to raise and explore every theory he desired, including two which were expressly waived by his attorney during argument at the preliminary hearing, the prosecutor was required not only to recall the officer who testified at the preliminary hearing (as authorized by Pen. Code, § 1538.5, subd. (i)), but also to go beyond the bounds of section 1538.5, subdivision (i) and call a second officer to testify who had not participated in the prior proceeding—necessitating the expenditure of substantial time and judicial resources that might have been devoted to other issues and other cases.

We certainly sympathize with the able trial court's concern that a defendant facing a sentence of 25 years to life receive the benefit of a thoroughgoing evidentiary hearing on his motion to suppress evidence. Ideally, *every* suppression motion should be accompanied by a complete record that clearly reveals the circumstances of the case and makes the validity of the officers' actions easy to discern. But the fact of the matter is, even when the record made during the preliminary hearing is "sparse," the trial court has no authority to carve out exceptions to the controlling statute.

If the prosecution is willing to submit on the preliminary hearing transcript, and there is no evidence which was unavailable at that hearing, the trial court is obliged to base its ruling on the contents of that document alone. The Legislature has decided, as a matter of policy, that only one full evidentiary hearing can be afforded each defendant, and consequently the trial court must deal with the record as it receives it—unless the case falls within one of the statutorily enumerated exceptions. We find no such exception applicable here.

Under Penal Code section 1538.5, subdivision (i), when a motion to suppress is brought at the preliminary hearing and renewed in the superior court, it makes no sense to permit a defendant to raise theories at the second

hearing which were not litigated at the first. To do so would not only run counter to the usual rule on review, which typically construes a failure to raise an issue in the lower court as a waiver (see, e.g., *People* v. *Mitchell* (1990) 222 Cal.App.3d 1306, 1311 [272 Cal.Rptr. 440]; *Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915, 938 [161 Cal.Rptr. 351]), it would also seriously draw down public resources by necessitating the repeated appearance of law enforcement officers, who must be taken away from other important duties every time they are required to attend the courts to testify. And it would contravene the clear purpose behind the 1986 legislative amendments to section 1538.5. We therefore hold that a defendant who has sought the suppression of evidence at his or her preliminary hearing, who then seeks to renew that motion in the superior court, is not entitled to advance theories at the second hearing that were not raised and litigated during the first.

Such a holding is consistent with our Supreme Court's description of the two hearings as complementary rather than independent proceedings. As the court observed, "[T]he two suppression hearings available to the defendant should not be viewed in isolation from each other. This is clear from the limited scope of the evidence admissible at the special hearing in the superior court when the defendant has already made a suppression motion at the preliminary hearing. At the special hearing in the superior court, neither the prosecution nor the defendant may introduce new witnesses who could reasonably have testified at the preliminary hearing." (*People* v. *Hansel*, *supra*, 1 Cal.4th at p. 1220.)

Here, Bennett was permitted to develop theories in the superior court which his attorney had abandoned during the first hearing on his motion to suppress, but the provisions of Penal Code section 1538.5, subdivision (i) did not authorize him to do so. Consequently, those theories, and the evidence that went with them, were not properly before the superior court, and we perceive neither authority nor need to rule upon them here.

The judgment is affirmed.

Sills, P. J., and Rylaarsdam, J., concurred.