Filed 10/30/13  P. v. Villa CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C070852 |
| Plaintiff and Respondent, | (Super. Ct. No. 056138 & 077016) |
| v. | |
| RICARDO RAUL VILLA, | |
| Defendant and Appellant. | |

Defendant Ricardo Raul Villa appeals in two separate cases leading to a prison sentence, contending one of the cases must be reversed because a prior decision of this court was erroneous, and the other case must be reversed because the trial court erroneously denied his motion to suppress.  Disagreeing, we shall affirm.

### BACKGROUND

A.  *The Prior Appeal*

On April 27, 2010, we issued our opinion in defendant's first appeal, summarizing the case and our holding as follows:

1

"In case number 07-7016, a jury convicted defendant Ricardo Raul Villa of possession of a firearm by a person convicted of a serious felony, a felony (Pen. Code, § 12021.1, subd. (a)), and making a false representation of identity to a peace officer, a misdemeanor (Pen. Code, § 148.9, subd. (a)). The court found true a count charging felony failure to appear (Pen. Code, § 1320.5), and allegations defendant committed a crime while on bail, had a prior strike, and had served a prior prison term (Pen. Code, §§ 12022.1, subd. (b), 667, subds. (b)-(i), 667.5, subd. (b)). In case number 05-6138, defendant pled no contest to active gang participation (Pen. Code, § 186.22, subd. (a)), and admitted a strike prior in exchange for the dismissal of other charges and a 16-month sentence, consecutive to the other case. The trial court sentenced defendant to 13 years and 8 months in prison. Defendant timely appealed.

"On appeal, defendant contends trial counsel was incompetent in failing to file a suppression motion, and the trial court erroneously construed his motion to relieve retained counsel as a *Marsden* motion to relieve appointed counsel. (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).) We agree with the latter claim and reverse the convictions in case number 07-7016. Because of our conclusion, we need not address defendant's claim that trial counsel was incompetent in not filing a suppression motion in that case, because defendant is free to file such a motion on remand. We conclude the conviction and strike admission in case number 05-6138 must be affirmed, because defendant was represented by new counsel and the plea bargain was not affected by the trial court's earlier error.

"Accordingly, we reverse the judgment in case number 07-7016, affirm the judgment in case number 05-6138, vacate the sentence and remand for further proceedings."

Our disposition read: "The judgment in case number 07-7016 is reversed but the judgment in case number 05-6138 is affirmed. The sentence is vacated, and the cause is remanded for further proceedings consistent with this opinion."

B. *Proceedings on Remand*

1. *Suppression motion*

On January 31, 2011, after the cause was remanded, new counsel filed a suppression motion, contending evidence was revealed during an unlawful detention.

2

The People contended no detention occurred, only a consensual encounter followed by a protective *Terry* patdown.[1]

Officer Justin Raymond of the Davis Police Department testified that at about a quarter to 1 a.m. on December 23, 2007, he was near a Motel 6 when he saw a Buick with two males inside pull into the parking lot. This was a high-crime area, and the motel owners had asked the police to increase patrols. Raymond asked Officer Dacany, who was driving, to park the patrol car "about three parking spaces to the east of the defendant's vehicle so as not to block him in." Raymond went to the passenger side of the Buick and asked defendant for identification, which defendant said he did not have. Raymond was not blocking the door, but stood so that if the door opened, it would not hit him. It was cold, "about 35 degrees[,]" but defendant's window was down. Defendant said he had a California driver's license but did not have it with him, that his name was "Carlos Ruiz," and that he had a certain birthdate, but Raymond was not able to match the name and birthdate through dispatch. When Raymond told defendant about this lack of a match, he noticed defendant "began to sweat. He stopped making eye contact with me and he began to stutter when he spoke." This all took about four to five minutes.[2] During this time, another patrol car arrived. Raymond asked defendant "if he wouldn't mind stepping out of the car" and defendant did so. Defendant was wearing "extremely baggy jeans, a white T-shirt that was almost down to his knees, and a black-hooded sweatshirt or jacket." Twice defendant looked "down on his front waistband." Raymond "could see a small bulge in his front-left waistband area" and then patted defendant down, revealing a handgun.

_____

[1]  See *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889].

[2]  At one point there is a typographical error in the reporter's transcript, stating "45 minutes[,]" but it is clear from the context, as reported consistently elsewhere, that it was a "four- to five-minute" period of time, not a "45-minute" period.

The trial court (Mock, J.) denied the motion, finding the encounter was not a detention, but was consensual.

### 2. *Partial Plea, Trial, and Sentencing*

Defendant pleaded no contest to misdemeanor providing false information to a peace officer and felony failure to appear (Pen. Code, §§ 148.9, subd. (a), 1320.5).

A jury found defendant guilty of possession of a firearm by a convicted felon, with the parties agreeing the felony was "serious" (Pen. Code, § 12021.1, subd. (a)).[3] Defendant then admitted allegations that he had a strike (assault with a firearm, Pen. Code, §§ 245, subd. (a), 667, subds. (b)-(i)), and had served a prior prison term (Pen. Code, § 667.5, subd. (b)), and he admitted two allegations that he committed the offenses while released on bail (Pen. Code, § 12022.1).

Defendant made what was captioned as a *Marsden* motion, but what appeared to be a motion to withdraw his plea in case No. 056138, based on incompetence of counsel. The trial court denied the motion to withdraw the plea because we had affirmed the judgment in that case on appeal. It then sentenced defendant to three years for the firearm possession count, and one-third the midterm (eight months) on the failure to appear count, doubled pursuant to the strike, plus two years for each on-bail enhancement and one year for the prior prison term, for a total of 12 years and four months in case No. 077016. The 16-month sentence in case No. 056138 was confirmed, to run consecutively, for a total state prison sentence of 13 years and eight months.

Defendant timely filed this appeal, which at his request we later construed to encompass both cases.

_____

[3] We deem it unnecessary to detail the evidence presented at trial, which included Officer Raymond's testimony that he found defendant in possession of a handgun, and a stipulation that defendant had been convicted of a "qualifying" felony.

4

## DISCUSSION

### I

### *The Plea Bargain in Case No. 056138*

Defendant claims that we must vacate his plea bargain in case No. 056138 because the plea "was rendered ineffectual, legally void," by our reversal of the judgment in case number 077016. This claim is incorrect. We explained in our prior opinion, after addressing the reversal in case No. 077016, the effect of that reversal on case No. 056138 as follows:

> "But, contrary to a passing contention by defendant, we conclude that reversal of the convictions in case number 07-7016 does not undermine the plea bargain in case number 05-6138. Defendant states the plea bargain 'was expressly contingent on the survival' of the convictions following the jury trial. This is not accurate. As stated above, the plea bargain contained a provision addressing what would happen 'if for some reason something happened to the convictions in that case you went to trial on,' specifically, that defendant faced a six-year exposure. The fact that 'something happened' to the convictions in case number 07-7016-- namely, we have reversed them--was a circumstance contemplated by the bargain and is not a basis to vacate that bargain, brokered by new counsel."

We then explained in a footnote in part as follows:

> "If defendant is reconvicted in case number 07-7016, the sentence in case number 05-6138 would again be 16 months, consecutive to the sentence in case number 07-7016. If, and only if, defendant is not reconvicted in case number 07-7016, defendant would face a six-year exposure in case number 05-6138."

Therefore, the validity of the plea bargain in case No. 056138 was upheld in our prior decision. Our resolution of that issue is law of the case and we will not reconsider it in this appeal. (See *People v. Stanley* (1995) 10 Cal.4th 764, 786-787; *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1364-1365 (*Dutra*).)[4]

---

[4] We need not address the People's contention that collateral estoppel bars defendant's claim. (But see *People v. Vogel* (2007) 148 Cal.App.4th 131, 135-136.) Law of the case adequately disposes of defendant's claim in this appeal.

Further, contrary to defendant's view, on remand the trial court lacked discretion to do anything except obey our remittitur:

> "After the remittitur 'the appellate court has no further jurisdiction of the appeal or of the proceedings thereon, *and all orders necessary to carry the judgment into effect shall be made by the court to which the certificate is remitted*.' (Pen. Code, § 1265, italics added.) Thus, the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court*." (*Dutra*, *supra*, 145 Cal.App.4th at p. 1366.)

On remand in this case, the trial court properly did what we told it to do, namely, after sentencing defendant in case No. 077016 upon reconviction in that case, the trial court reinstated a consecutive 16-month sentence in case No. 06138.

II

*Motion to Suppress*

Defendant contends the trial court should have granted his motion to suppress the handgun found on his person. We disagree.

A. *The Law*

"In reviewing the denial of a motion to suppress, we must accept all facts in favor of the ruling, including all reasonable inferences and deductions, if supported by substantial evidence." (*People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227 (*Castaneda*).) A consensual encounter does not implicate the Fourth Amendment. (See *In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).) As explained by one court:

> "An officer has every right to talk to anyone he encounters while regularly performing his duties, such as investigating illegal parking [citation] or cars parked in lots late at night [citation]. Until the officer asserts some restraint on the contact's freedom to move, no detention occurs. [Citations.]

> "Castaneda was not detained simply because an officer approached him and began talking to him. And the officer's requesting identification from him did not--by itself--escalate the encounter to a detention. [Citations.] The test is at what point in the conversation would 'a reasonable person [no longer] feel free to leave. . . .' [Citation.] This is an objective test, and '[n]either the officer's uncommunicated state of mind nor the subjective belief of the individual citizen is

6

relevant[.]'" (*Castaneda*, *supra*, 35 Cal.App.4th at p. 1227; see *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1253-1254.)

And as explained by another court:

> "By now, it is generally understood that '"[t]here is nothing in the Constitution which prevents a police [officer] from addressing questions to anyone on the streets," [citation]. Police officers enjoy "the liberty (. . . possessed by every citizen) to address questions to other persons," [citation], although ordinarily the person addressed has an equal right to ignore his interrogator and walk away." [Citation.]' [Citations.] 'As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.'" (*People v. Bennett* (1998) 68 Cal.App.4th 396, 401-402 (*Bennett*).)

B. *Analysis*

Defendant reargues the facts and reasonable inferences therefrom to assert that a reasonable person in his position would not feel free to leave the encounter, particularly because of the lateness of the hour, the arrival of another patrol vehicle, and the fact defendant was a passenger, and therefore would have to leave on foot if he wanted to leave and the driver did not want to leave. We are not persuaded. There is no evidence of use or even threat of force, and defendant was free to decline the invitation to speak with Officer Raymond and decline to get out of the car. Although defendant claims no reasonable person "would have dared try just to get out of the car and walk away[,]" we disagree. A reasonable person who did not wish to talk to the police could have done just that, politely, or could have rolled up the window, or could have asked the driver to leave the area. Instead, defendant chose to cooperate with the police, a right every person has during a consensual encounter.

The facts here are functionally similar to those in a prior case, as follows:

> "In the initial contact between Bennett and Officer Gonzales, nothing was done to restrain Bennett's liberty in any way. Instead, Gonzales approached Bennett and asked, 'Can I talk to you for a moment?' Bennett replied, "Yes.' When Gonzales inquired whether Bennett was on parole, Bennett again answered

7

in the affirmative. When asked whether he would mind waiting in the back of the police car while Gonzales ran him for warrants, Bennett again agreed and, according to the testimony, was 'very cooperative.' Gonzales spoke in a polite, conversational tone and applied no physical or verbal force that might have caused a reasonable person to feel compelled to respond. From all appearances, Bennett's responses were all voluntarily given, and nothing was done by Gonzales to transmogrify the consensual tone of the conversation or stop Bennett from simply walking away." (*Bennett*, *supra*, 68 Cal.App.4th at p. 402; see *Manuel G.*, *supra*, 16 Cal.4th at p. 822 [consensual encounter where officer asked minor "whether they could talk, and the minor responded to his questions" but did not "draw his gun or deter or stop the minor from continuing what he was doing"].)

Although, as defendant points out, he was not on parole, that fact was not significant to the finding of a consensual encounter in *Bennett*. Officer Raymond asked defendant if "if he wouldn't mind stepping out of the car" and defendant evidently did not mind. Based on the record, "nothing was done by [Raymond] to transmogrify the consensual tone of the conversation or stop [defendant] from simply walking away." (*Bennett*, *supra*, 68 Cal.App.4th at p. 402.)

## DISPOSITION

The judgment is affirmed.

        DUARTE        , J.

We concur:

    NICHOLSON    , Acting P. J.


    MAURO    , J.