Filed 9/28/16  P. v. Barcena CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. BRANDON DAVID BARCENA, Defendant and Appellant. | 2d Crim. No. B266127 (Super. Ct. No. 1452100) (Santa Barbara County) |

Brandon David Barcena appeals a judgment following his guilty plea to possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)),[1] possession of ammunition by a felon (§ 30305, subd. (a)(1)), and possession of an assault weapon (§ 30605, subd. (a)).  Before his plea, Barcena moved to suppress evidence, which the trial court denied.  We affirm.

### FACTS

On January 18, 2014, agents of the California Department of Justice (DOJ) were observing activities at a gun show in Bakersfield, California.  DOJ agent Matthew Knittle noticed Barcena going in and out of the gun show and back to his vehicle.  Barcena was carrying an "AR15 style upper receiver" for a rifle, a "black ammunition canister," and a white plastic bag.  His conduct was suspicious.  He appeared nervous; he was "looking over his shoulders."  The weather was not warm, but he was sweating.

---

[1] All statutory references are to the Penal Code.

Barcena went to his car and placed the items in his trunk. Then he waited in the vehicle. Later he went back to the gun show. He inquired about the price of ".40 caliber handgun ammunition." He went back to his car and drove away.

Knittle testified that they did not know Barcena's identity. "[I]n an effort to positively identify [him], we requested Bakersfield [police department] contact him." If the Bakersfield police department was not able to obtain the information, DOJ would have maintained "visual surveillance" and asked the California Highway Patrol to "conduct a traffic stop."

Bakersfield Police Officer Jonathan Berumen received a dispatch call regarding the DOJ request and Barcena's location. He drove to that location and saw Barcena's car in the "drive-through" lane of a restaurant. Three other officers were at the scene. Berumen parked his patrol car so that it would not block Barcena's "vehicle from leaving the drive-through." He approached Barcena's car, knocked on the passenger window and asked him if he would step out of the vehicle. Barcena "consented." Berumen asked if Barcena would show him his license or identification. Barcena agreed and produced the identification.

Barcena talked to one of the officers about what he had purchased at the gun show. He "consented" to a search of the trunk of his vehicle to show the officers what he purchased. After that search, Barcena drove away.

The police obtained a search warrant for Barcena's home. They seized a gun, an assault rifle and ammunition, all of which were illegal for him to possess as a felon. After the People filed the felony complaint, Barcena filed a motion to suppress evidence, claiming the items were seized as a result of "illegal police conduct" in "violation of the Fourth Amendment."

At the motion to suppress hearing, Barcena testified he did not feel free to leave the area because police handcuffed him and Berumen's car blocked him from leaving. Berumen testified that Barcena was not handcuffed, his patrol car did not block him, and Barcena was free to leave at anytime. Berumen said that it was a consensual encounter and that Barcena "consented to everything that [he] asked him."

2

The trial court denied the motion. It found Barcena was not credible, there was no detention, and Barcena's discussions, actions and the encounters with police were "consensual."

## DISCUSSION

### *Motion to Suppress*

Barcena contends he was detained and his encounter with police "was not consensual." Therefore, the information police obtained during the detention should have been excluded. We agree with the People that Barcena was not detained, but that he voluntarily cooperated with the police. The encounter was consensual.

"'"'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence."'"'" (*People v. Leath* (2013) 217 Cal.App.4th 344, 350.) We use our independent judgment "on the facts so found" to determine whether the Fourth Amendment was violated. (*Ibid.*) We do not decide the credibility of the witnesses, resolve conflicts in the testimony, or weigh the evidence. Those determinations are made by the trial court. (*People v. Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410.)

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States v. Mendenhall* (1980) 446 U.S. 544, 554.) "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (*Ibid.*; *People v. Leath*, *supra*, 217 Cal.App.4th at p. 350 [a detention did not occur where police officers asked for the defendant's "identification card and retained it"].)

3

*A Consensual Encounter*

"Unlike a detention, a consensual encounter between a police officer and an individual does not implicate the Fourth Amendment." (*People v. Rivera* (2007) 41 Cal.4th 304, 309.) "It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so." (*Ibid*.) "There is no Fourth Amendment violation as long as circumstances are such that a reasonable person would feel free to leave or end the encounter." (*Ibid.*) "Consensual encounters require no articulable suspicion of criminal activity." (*Ibid.*)

In *People v. Bennett* (1998) 68 Cal.App.4th 396, 402, the police officer asked the defendant if he would mind waiting in a police car so the officer could run a warrants check. The defendant agreed and cooperated. The court ruled the encounter was consensual. The officer "spoke in a polite, conversational tone and applied no physical or verbal force that might have caused a reasonable person to feel compelled to respond." (*Ibid*.)

Officer Berumen testified that Barcena "*consented to everything* that [he] asked him." (Italics added.) Berumen's actions were not intimidating or coercive. He did not activate his lights or siren. (*People v. Perez* (1989) 211 Cal.App.3d 1492, 1496.) He did not draw his gun. He did not stop Barcena's vehicle because "it was already stopped." He did not use force or threaten to use it. He did not physically detain Barcena or threaten to arrest him.

Berumen asked if Barcena had any weapons. Barcena had just come from a gun show. Barcena "consented" to a pat-down search. Berumen said he made sure that the language he used was not intimidating. There was no evidence that he made any "overt or implied threat of force." (*People v. Monterroso* (2004) 34 Cal.4th 743, 758.) He "asked if" Barcena would show him his license or identification and Barcena agreed. (*People v. Leath*, *supra*, 217 Cal.App.4th at p. 350 [asking for identification does not constitute a detention].) Berumen "applied no physical or verbal force that might have caused a reasonable person to feel compelled to respond." (*People v. Bennett*, *supra*, 68 Cal.App.4th at p. 402.)

4

The trial court found, "[T]he officer acted in a non-detention oriented mindset from the get-go; that was his testimony. He was clear that every discussion or conversation with Mr. Barcena was consensual . . . ." "'The . . . voluntariness of the consent is to be determined in the first instance by the trier of fact . . . .'" (*People v. Monterroso*, *supra*, 34 Cal.4th at p. 758.) Barcena has not shown a lack of substantial evidence to support the court's findings. (*Ibid.*) Berumen testified, "[T]he way this stop occurred it needed to be consensual, so I attempted to keep it that way and be as professional as possible." If "at any point" Barcena had asked to leave, he would have been free to leave.

*Use of Restraint*

Here the trial court rejected Barcena's claim that police had physically restrained him or prevented him from leaving. Barcena testified he did not feel free to leave because police "handcuffed" him. But the court found Barcena was not credible. It believed Officer Berumen who testified Barcena was not handcuffed.

Barcena testified Berumen told him to "give" him his "right or left hand" and then the officer physically assisted him to make sure he got out of the vehicle. But the trial court believed Berumen who testified that he did not go to the driver's side or pull Barcena out of the vehicle. He simply asked Barcena "if he'd be willing to step out of the vehicle," and Barcena "complied and stepped out *on his own will*." (Italics added.)

Barcena contends the parking of the "patrol car was done in a way that a reasonable person would have believed he was not free to leave." The trial court rejected Barcena's testimony that the patrol car blocked him from leaving. Berumen testified he parked the patrol vehicle "at an angle" and it was only "partially" in front of Barcena's vehicle. The positioning of a police vehicle in front of a defendant's car is not a detention where the police leave "room for the defendant's car to leave." (*People v. Perez*, *supra*, 211 Cal.App.3d at p. 1496; *People v. Franklin* (1987) 192 Cal.App.3d 935, 940 ["the officer did not block appellant's way"].) Berumen testified Barcena's vehicle was in the "drive-through" area of a restaurant. He parked his patrol car *so that it would not block Barcena's vehicle* from leaving through that drive-through area. Other

5

restaurant customers were able to "get their food" and "were able to leave" from that area without Berumen having to move his patrol vehicle.

Barcena notes that during Berumen's testimony Berumen made a drawing of the position of his patrol vehicle. He claims it depicts the patrol car "facing against the direction of traffic" in the drive-through lane in such a way "that made any subsequent questioning coercive." But the accuracy and scale of that drawing, its weight, and the resolution of conflicts it presented with Berumen's testimony were evidentiary matters the trial court resolved against Barcena. (*People v. Superior Court (Keithley)*, *supra*, 13 Cal.3d at p. 410.)

### *Multiple Officers*

Barcena notes that there were three other officers present. He claims this was "an absurd degree of overkill for a stop designed merely to determine [his] identity." The presence of multiple officers may be considered in determining whether there was a consensual encounter. (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) But courts examine "the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation." (*Ibid.*)

Berumen asked Barcena "*if he would speak* with the other officers that were on the scene." He made no demands. Barcena walked "on his own," unaccompanied by any officer, to an area 30 feet from his car, and sat on a curb. Barcena consented to a search of his trunk, which contained the items he purchased at the gun show. He left after that search. Berumen testified the time that elapsed for the entire stop "was 10 to15 minutes."

The officers did not draw their weapons, use physical force or threaten to use force. They did not give commands or engage in coercive conduct. They did not threaten to arrest him. One of those officers asked "*if he could see* what [Barcena] had purchased" at the gun show. The language was not confrontational. Barcena testified that while he was sitting on the curb an officer talked with him. "He was just talking about the weather and what else I was doing in Bakersfield, just passing time."

6

We have reviewed Barcena's remaining contentions and conclude he has not shown grounds for reversal.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

Rogelio R. Flores, Judge

Superior Court County of Santa Barbara

_____

Greg May, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill, Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.