Filed 8/22/24  P. v. Guidry CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062405 |
| v. | (Super. Ct. No. 22WF1993) |
| JOHN EARL GUIDRY II, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Juliet Macaulay and Lewis W. Clapp, Judges. Affirmed as modified.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

John Earl Guidry II, who represented himself at trial, appeals from a judgment after a jury convicted him of second degree burglary, grand theft, and two misdemeanors. Guidry argues the trial court erred by denying his motion to suppress evidence, denying his request to renew his suppression motion, denying his motion to dismiss, denying his motion for peace officer personnel records, and imposing multiple punishments. Although we agree with his sentencing arguments, his other contentions have no merit. We affirm the judgment as modified.

FACTS[1]

One evening about 9:50 p.m., V.P., a Walmart employee, saw Guidry enter the store. V.P. recognized Guidry because security had circulated "be on the lookout pictures" of him. After speaking with a Walmart asset protection director, she called 911. While talking with the 911 operator, she began following Guidry toward the electronics section.

Surveillance footage showed Guidry using a hammer to break open a cash register in the electronics section. Guidry left the store at 9:53 p.m., three minutes after he had entered. When V.P. learned a register had been broken into, she had an associate secure the remaining contents of the register so they could determine how much money had been taken. The register was broken and $1,755 was missing.

Huntington Beach Police Officer Tommy Mang responded to a call of a theft at Walmart. Mang received information from dispatch that the suspect "was a male, [B]lack, approximately 20 or 30 years old, wearing a

---

[1] Guidry does not challenge the sufficiency of the evidence supporting his convictions. Under established appellate principles, we recite the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

2

black jacket, black pants, and had association with a black backpack." Around the same time, Walmart security chased another suspect.

Around 12 minutes after Guidry left the Walmart, Mang noticed Guidry less than a mile away. Guidry, who fit the suspect's description, was hiding near bushes by a bus stop. Mang got out of his vehicle and approached Guidry on foot. After Guidry gave Mang consent to search his backpack and person, Mang pulled a large wad of cash out of Guidry's pants' pocket.

When officers later counted the money, it totaled $1,755. Police found two register receipts inside the wad of cash. Those register receipts were marked as coming from the register Guidry had broken into. Inside Guidry's black backpack, police found a black jacket and a hammer. Another officer escorted V.P. to an in-field show up where she confirmed Guidry was the person she saw entering the store.

An information charged Guidry with second degree burglary (Pen. Code, §§ 459, 460, subd. (b),[2] count 1), grand theft (§ 487, subd. (a), count 2), misdemeanor vandalism (§ 594, subds. (a), (b)(2)(A), count 3), and misdemeanor possession of burglary tools (§ 466, count 4). The information alleged Guidry had suffered a prior "strike" conviction (§§ 667, subds. (d), (e)(1) & 1170.12, subds. (b), (c)(1)) and a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)). The jury convicted Guidry of all counts and he admitted he had suffered the prior conviction.

The trial court dismissed the prior conviction and sentenced Guidry to the low term of 16 months on count 1, the low term of 16 months on count 2, one year in jail on count 3, and 180 days in jail on count 4. The court

---

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

3

ran the sentences on counts 2, 3, and 4 concurrently to count 1. The court awarded credits for time served.

DISCUSSION

I.

MOTIONS TO SUPPRESS EVIDENCE

Guidry argues the trial court erred by denying his motion to suppress and refusing to consider his renewed motion to suppress. As we explain below, neither contention has merit.

*A. Motion to Suppress*

1. Background

Guidry filed a motion to suppress evidence pursuant to section 1538.5. At the preliminary hearing, the trial court, Judge Juliet Macaulay, stated she would consider the suppression motion concurrently with the preliminary hearing.

Mang testified he was on duty in a marked patrol car. At around 9:55 p.m., he received a call of a grand theft at Walmart. The call stated the suspect was a Black male, approximately 20 to 30 years old, approximately 5 feet 8 inches tall, 140 pounds, and wearing a black hoodie, black jeans, and a black backpack. The call said the suspect had stolen cash out of the register. The call also stated the man was last seen heading northbound on Beach Boulevard.

Mang drove northbound on Beach Boulevard. About 10:05 p.m., he noticed a possible suspect matching the description. The suspect, who was "less than a quarter of a mile" or "about a city block north" of the Walmart, was a Black male wearing black clothing.

Mang drove to the curb, activated his emergency lights to stop the traffic behind him, got out of his vehicle, and saw the backpack. Mang did

4

not have his spotlight on Guidry. From about 15 yards away, Mang called to Guidry and asked him to come toward him to talk to him.

When Mang asked Guidry if he had been at Walmart, he said no. Mang testified he believed Guidry was detained at that point. When Mang asked Guidry if he could search him, he gave consent. Mang "located [an] abundance of cash" in his pocket. Because it was windy, Mang secured the bills in a brown paper bag. At the scene, Mang also searched his backpack and found a black hooded sweater and a hammer.

Mang's body worn camera footage was admitted into evidence. The video, which was silent for several seconds, began with Mang walking down the sidewalk. Guidry appeared from the darkness at the edge of the video and sat on a bench located a few yards behind the bus stop. Mang stopped on the other side of some foliage and talked to Guidry. When the audio began, Mang asked Guidry, who was wearing a green sweatshirt and a mask covering his beard, about KFC. Mang asked him whether he stole a cash register. Guidry said he was waiting for the bus, did not come from KFC, and did not take a cash register. Mang spoke with another officer. When Mang asked Guidry if he could search the backpack, he said yes.

As Mang put on latex gloves, he asked Guidry if he had any weapons on him. Guidry said no. When Mang asked Guidry if he could search him, he said yes. Mang pulled a large wad of cash out of Guidry's pants' pocket. After finding the money, Mang told Guidry he was detained and handcuffed him. During Guidry's cross-examination of Mang, the trial court stated the record should reflect Guidry's beard was gray. Guidry elicited testimony from Mang that he stopped Guidry 1.2 miles from Walmart.

When the prosecution rested, the trial court announced that it was prepared to rule. Guidry said he wanted to testify.

Guidry testified Mang had shined a spotlight on him and advanced at him aggressively. He saw red and blue lights and was not sure if the officer had a gun pointed at him. He said that he had not been hiding but was sitting near the bus stop smoking a cigarette and looking at his phone. He admitted giving Mang permission to pat him down but claimed he did not consent to a search of his pockets.

Following argument, the trial court denied Guidry's motion to suppress, opining Guidry consented to the searches.

2. Law and Analysis

The Fourth Amendment prohibits unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1, 8; *People v. Fayed* (2020) 9 Cal.5th 147, 182.) There are three different categories of police contacts with individuals—consensual encounters, detentions, and arrests. (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784.)

"Although a brief investigatory *detention* need not be supported by probable cause, it must be based on reasonable suspicion that criminal activity is afoot—i.e., 'specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citations.] The reasonable suspicion standard is objective in nature, 'based on the facts and circumstances known to the officer but without regard to the officer's subjective state of mind.' [Citation.] Mere rumor or hunch do not suffice. [Citations.] '[W]here a reasonable suspicion of criminal activity exists, "the public rightfully expects a police officer to inquire into such circumstances 'in the proper exercise of the officer's duties.'"' [Citation.]" (*In re Edgerrin J.* (2020) 57 Cal.App.5th 752, 762, italics added.) We independently assess whether the challenged seizure satisfies the Fourth Amendment but review

the trial court's explicit or implicit factual findings for substantial evidence. (*People v. Brown* (2015) 61 Cal.4th 968, 975; *People v. Weaver* (2001) 26 Cal.4th 876, 924.)

Here, there were specific and articulable facts causing Mang to suspect that criminal activity had taken place and that Guidry was involved in that activity. First, there was strong evidence that criminal activity was afoot because Mang received "a call of a grand theft that had just occurred at a Walmart" located "at the corner of Beach and Talbert." The evidence demonstrated that someone had broken into a cash register and stolen cash. Mang justifiably relied on these facts to investigate the reported offense. (*In re Edgerrin J., supra*, 57 Cal.App.5th at p. 762.) Thus, there was strong evidence that criminal activity was afoot.

Second, there was strong evidence that Guidry was involved in that criminal activity because he fit the description of the suspect who fled from Walmart. (*People v. Fields* (1984) 159 Cal.App.3d 555, 564 [reasonable suspicion to detain where the suspect matched the victim's description, which included suspect's race, gender, height, general age group, and attire].) The dispatch report stated the suspect was a Black male, approximately 5 feet 8 inches, approximately 20 to 30 years old, 140 pounds, with a black backpack, black hoodie, and black jeans. The report also stated the suspect fled Walmart "and was last seen going northbound [on] Beach Boulevard from the location." Mang was driving northbound from Walmart when he spotted Guidry on Beach Boulevard. This was about 10 minutes after the dispatch call and no more than 1.25 miles from the Walmart. Thus, the evidence established Guidry was in the vicinity shortly after the crime.

Additionally, Guidry generally matched the description of the suspect. It is undisputed Guidry was a Black male. It was also undisputed

Guidry was wearing dark clothing and had a black backpack. Thus, he fit multiple points of the suspect's description. And the fact he fit multiple points of the description refutes Guidry's claim Mang engaged in racial profiling. (§ 13519.4, subd. (f) ["peace officer shall not engage in racial or identity profiling"].) Based on all these circumstances, Mang was able to articulate multiple facts that caused him to suspect that Guidry was the suspect. (*People v. Thomas* (2018) 29 Cal.App.5th 1107, 1116 ["A general description combined with a close temporal and geographical connection between the crime and the suspects, may justify a detention"].) Finally, as confirmed by the body worn camera footage, Guidry consented to the search.

Guidry points out several differences, i.e., race, age, weight, and clothing, between himself and the suspect's description to assert Mang did not have reasonable suspicion. The United States Supreme Court, however, has specifically rejected a "divide-and-conquer" analysis in which individual facts are considered in isolation. (*United States v. Arvizu* (2002) 534 U.S. 266, 274.) Reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing. [Citation.]" (*Id.* at p. 273.) Here, the totality of the circumstances provided some objective manifestation that Guidry may be involved in criminal activity. The trial court properly denied Guidry's motion to suppress.

*B. Renewed Motion to Suppress*

1. Background

At his October 2022 arraignment, the trial court set trial for November 23, 2022. On October 21, 2022, Guidry filed a motion to compel discovery. In that motion, he wrote that he wanted to renew his section 1538.5 motion.

On November 18, 2022, Guidry filed a section 995 motion asserting the trial court erroneously denied his section 1538.5 motion. On November 23, 2022, he filed a supplemental brief in support of his section 995 motion. In that brief, he wrote that he wanted to renew his section 1538.5 motion.

On November 28, 2022, Guidry answered ready for trial. Once the parties were sent to a trial department, before Judge Lewis W. Clapp, Guidry again answered ready but raised several issues. Guidry did not want to waive time for purposes of his right to a speedy trial. He did not mention renewing his section 1538.5 motion.

The following day, the trial court denied several of Guidry's motions. After discussing his in limine motions, Guidry told the court that he wanted to renew his section 1538.5 motion. The court denied the request. When the court asked Guidry if that motion had already been heard, he said, "It was done in the prelim, so I can renew it in the trial court." The court told Guidry that he could not renew the motion at this time because they were "going to get a jury up here today." Guidry argued there was caselaw stating he could renew the motion but he did not have it. The prosecution stated the trial court had already denied the motion, Guidry answered ready for trial, and it had not received notice. Guidry responded it was just a renewal and the court should simply apply the facts and the law without reinterpreting or reweighing the evidence. The court denied Guidry's request to bring his motion "at this juncture of the case."

During trial, on December 8, 2022, Guidry attempted to renew his section 1538.5 motion. The court denied the request because it was "not the appropriate time."

9

2. Law and Analysis

Assuming without deciding the trial court erred by refusing to allow Guidry to renew his motion to suppress, Guidry cannot establish he was prejudiced. We evaluate any error under *People v. Watson* (1956) 46 Cal.2d 818, 836—whether it was reasonably probable Guidry would have achieved a more favorable ruling had Judge Clapp allowed him to renew his motion. We conclude it is not reasonably probable.

"Under . . . section 1538.5, subdivision (i) as amended, '[a] defendant is now entitled to only one full [evidentiary] hearing on his [or her] suppression motion. The factual findings of the magistrate . . . are binding on the superior court which, in effect, becomes a reviewing court drawing all inferences in favor of the magistrate's findings, where they are supported by substantial evidence. [Citations.]'  [Citation.]" (*People v. Bennett* (1998) 68 Cal.App.4th 396, 405 (*Bennett*).)

As *Bennett* teaches, Guidry would not have been able to present any new evidence to the trial court. As we explain above, the totality of the circumstances provided some objective manifestation that Guidry may have been involved in criminal activity. Had Judge Clapp considered Guidry's renewed motion to suppress, it is not reasonably probable he would have achieved a more favorable result. Guidry's reliance on *People v. Herrera* (1980) 104 Cal.App.3d 167, is misplaced as it did not concern a motion to suppress evidence but in part his motion to proceed in propria persona, a structural error resulting in per se reversal. Guidry was not prejudiced.

## II.

### PRESERVATION OF EVIDENCE

Guidry contends the trial court erred by denying his motion to dismiss pursuant to *California v. Trombetta* (1984) 467 U.S. 479 (*Trombetta*),

10

and *Arizona v. Youngblood* (1988) 488 U.S. 51 (*Youngblood*) because an officer failed to collect evidence. We disagree.

*A. Background*

Before the preliminary hearing began, the prosecutor informed the trial court that Officer Dylan Villarreal told him that Walmart security guards thought there was another suspect and chased him. The security guards indicated that Guidry was not the perpetrator. Villarreal believed Guidry was the suspect but sent an officer to talk to the security guards. The person that security had been chasing was never found. Villarreal was going to put this information into a supplemental report so the prosecutor could give it to Guidry.

Villarreal prepared the report, and Guidry received it. Evidence that security guards chased an alternate suspect in a red shirt was presented at the preliminary hearing.

Guidry filed a *Trombetta/Youngblood* motion to dismiss arguing the prosecution failed to obtain third-party culpability evidence. That same day, the court heard the motion. At the hearing, the trial court noted that the law imposes a duty on the prosecution to preserve exculpatory evidence but it does not impose a duty to collect evidence that might be beneficial to the defense. The court said Guidry's claim fell into the latter category. After Guidry asserted the evidence was "exculpatory per se," the court explained to Guidry what he had to establish and to "try to bring out that evidence."

At an Evidence Code section 402 hearing, Villarreal testified. Villarreal testified he responded to a call at the Walmart around 10:00 p.m. The initial reporting party, V.P., described the suspect as a Black male with black clothes and a black backpack. During the investigation, Villarreal received a report that there was another suspect. The second employee

11

described this potential suspect as a White male wearing a red shirt. While Villarreal was talking with V.P., another employee said security was chasing another suspect. Villarreal "put that over the radio." V.P. corrected the other employee, stating that the thief was a Black male in a black hoodie. Villarreal confirmed he never contacted a suspect with a red shirt or interviewed anyone who saw a suspect with a red shirt. He did not collect any names, addresses, or phone numbers associated with the report about the individual in a red shirt because V.P. said that person was not the thief. Villarreal later tried to locate the security guard but no one knew his name or ever got back to him.

The trial court asked Villarreal a series of questions confirming that the information about the second suspect came *after* the initial report describing Guidry. The court also elicited from Villarreal that he did not act on that information because V.P. told him that person was not the thief.

On cross-examination, Villareal confirmed that V.P. did not see the person commit the crime. He tried to gather information that would eliminate someone as a suspect. Villarreal did not speak to the second employee, and once V.P. told that employee the suspect was a Black male in a hoodie, he concluded the evidence of the man in the red shirt was irrelevant. Later, he testified that he tried to interview the people who had chased the other suspect but was unable to find them. He did not write about this in his initial report. Villarreal wrote a supplemental report "to clarify [his] train of thought for why [he] did not interview anybody." After Guidry called Villarreal a "damn liar" and accused him of planting evidence, the trial court ended the cross-examination. At the conclusion of the hearing, the court denied Guidry's motion to dismiss the case for "failure to collect what [he] believe[d] was exculpatory evidence."

12

*B. Law and Analysis*

"The federal constitutional guarantee of due process imposes a duty on the state to preserve 'evidence that might be expected to play a significant role in the suspect's defense.' [Citation.] In other words, that evidence 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' [Citation.] Generally, due process does not require the police to collect particular items of evidence. [Citation.] 'The police cannot be expected to "gather up everything which might eventually prove useful to the defense."' [Citation.] A trial court's ruling on a *Trombetta* motion is upheld on appeal if a reviewing court finds substantial evidence supporting the ruling. [Citation.]" (*People v. Montes* (2014) 58 Cal.4th 809, 837 (*Montes*).)

Here, substantial evidence supports the trial court's ruling Villarreal did not err by not collecting evidence of third-party culpability. Preliminarily, Guidry cannot establish the prosecution failed to collect evidence that Walmart security guards chased a second suspect. Villarreal documented what occurred in a supplemental report that Guidry introduced as evidence of this alternative suspect at trial. The evidence regarding the alternative suspect in the red shirt was disclosed to the defense and admitted at trial. Additionally, there was no evidence Villarreal acted in bad faith. (*Montes, supra,* 58 Cal.4th at p. 838 [police bad faith required to establish due process violation].) Villarreal initially pursued but then abandoned any investigation into another suspect based on the reporting party's description of the suspect. V.P. told Villarreal the other suspect "was not the one that she saw." Based on V.P.'s description, Villarreal did not believe the other suspect was involved. His failure to further investigate into the other suspect was not

13

made in bad faith. In fact, Villarreal went further than required when he later tried to locate the security guard.

Guidry's reliance on *People v. Fultz* (2021) 69 Cal.App.5th 395, is misplaced. In that case, the case against defendant largely relied on the testimony of the accomplices and their statements were highly relevant impeachment evidence. (*Id.* at p. 428.) However, the government intentionally muted the audio while recording the accomplices' interviews. (*Ibid.*) Here, Guidry can point to no part of the record where it is affirmatively shown that Villarreal deliberately, intentionally, and in bad faith failed to collect or destroyed third-party culpability evidence.

III.

PITCHESS MOTION

Guidry asserts the trial court erred by denying his motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Not so.

*A. Background*

Before trial, Guidry filed a *Pitchess* motion asking for "personnel records and records of investigations conducted by [the] Huntington Beach Police Department's internal affairs unit with respect to citizens' complaints of official misconduct" of the officers who had been involved in his case. In his motion, he requested records related to excessive force for the officers, but he did not attach a police report as statutorily required. The City of Huntington Beach filed an opposition.

At a hearing on November 18, 2022, the trial court heard argument on the *Pitchess* motion. Guidry referenced an Evidence Code section but said it was not relevant to him because he was not requesting "'complaints.'" He claimed there was "a good reason [he] didn't attach a report" without explanation. The court informed him that was "the problem

14

with being a pro per defendant." The court told him that if he had a police report he was supposed to have attached it so that the court could "know what's going on." Without the police report, the court had "no idea what's going on with [his] case and how this [motion] may be relevant." Guidry appeared to indicate he had a copy with him. The court, however, informed him the motion was procedurally defective because he did not comply with the 10-day notice requirement and there was not enough information in the motion. The court denied the motion without prejudice. After Guidry asked if he had to file the motion again or just the police report, the court repeated he needed to file another motion and "pay attention to [the] details." Guidry said, "That's fine."

Over a week later, the parties answered ready for trial. Guidry told the trial court the prosecution gave him "belated discovery" that "compromised [his] *Pitchess* motion which was denied because [he] didn't attach the police report because [his] investigator didn't have it." Later, he mentioned that his investigator had "filed a *Pitchess* motion, which [was] probably a moot point now." That same day, he refiled his *Pitchess* motion. He included a copy of the police report.

The next day, the trial court heard argument on the renewed *Pitchess* motion. The court noted the written motion was "barely legible." The prosecutor argued the motion was untimely because Guidry had answered ready for trial. But he noted that if Guidry wanted to withdraw his readiness, there would be good cause to grant a continuance and hear the motion.

Guidry first stated he did not have the police report but then stated he did not want to "relinquish" it. He contended he should not "be held to such strict adherence to [Evidence Code section] 1043 and its provision" and that he should not "be goaded into waiving time and to withdraw

15

readiness because [the] reasons why [he] didn't file the motion properly are because of the [prosecution's] belated discovery."

The trial court replied he could "go to trial or [he could] continue the matter and comply with [Evidence Code section] 1043 and do [his] *Pitchess*." The court noted that a police report needed to be attached to a *Pitchess* motion if there was an allegation of excessive force but he seemed to be alleging the officers were dishonest or untruthful. The court added he was still required to comply with the notice requirements. The court said Guidry had to decide whether to waive time or forego his *Pitchess* motion. Guidry would not waive time, stating "it's time to nip this in the bud" and he was "going to fight like Buster Douglas fought Mike Tyson." The court did not "entertain" the *Pitchess* motion.

B. *Law and Analysis*

"'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045.' [Citation.] A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists 'when the defendant shows both "'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." [Citation.]' [Citation.]" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180.) "'If the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, the custodian of records should bring to court all documents "potentially relevant" to the defendant's motion. [Citation.]'" (*People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696, 710–711.) The court is not required to conduct a hearing on the motion for discovery unless the party seeking

16

disclosure has fully complied with the provisions of Evidence Code section 1043. We review the trial court's ruling for an abuse of discretion. (*People v. McDaniel* (2021) 12 Cal.5th 97, 134.)

Here, the trial court did not abuse its discretion by denying Guidry's *Pitchess* motion on November 18, 2022.[3] Evidence Code section 1046 requires that a "party seeking disclosure [who] is alleging excessive force by a peace officer . . . in connection with the arrest of that party, . . . include a copy of the police report setting forth the circumstances under which the party was stopped and arrested . . . ." Although it is true that Guidry's motion never explicitly stated that the officers who arrested him assaulted him, the motion itself is not a model of clarity. In his motion, he specifically asked for excessive force records. Despite the fact he sought these records, he did not attach a copy of the police report to his motion as required by Evidence Code section 1046. Additionally, when arguing the motion, he never clarified that he was not alleging excessive force. Instead, when the trial court told him that he had to file another motion, he said, "That's fine." Based on Guidry's motion requesting excessive force records and the lack of information in the motion, it was reasonable for the court to assume he was alleging excessive force. Had Guidry wanted the court to grant the motion in part and deny it in part, he should have asked the court to do so—he cannot complain now. On this record, Guidry cannot show the court abused its discretion by denying his motion.

---

[3] Guidry does not argue the trial court erred by refusing to consider his *Pitchess* motion on November 29, 2022.

## IV.

### CUMULATIVE ERROR

Guidry claims the cumulative prejudice of the trial court's errors requires reversal. Because we have concluded that all his claims of error are meritless or harmless, there is no cumulative error. (*People v. Avila* (2006) 38 Cal.4th 491, 608.)

## V.

### SECTION 654

Guidry argues the trial court erred by not staying the punishment on counts 2, 3, and 4 pursuant to section 654 because they were part of the same course of conduct as count 1. The Attorney General agrees, as do we.

Section 654 prohibits multiple punishment where the same act or omission or "'a course of conduct deemed to be indivisible in time'" results in multiple statutory violations. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) After Guidry entered the Walmart (burglary), he used his hammer (the burglary tool) to break a cash register (vandalism) and steal the store's money (grand theft). Because all four crimes were committed as part of one indivisible course of conduct, the trial court should have stayed the punishment for counts 2, 3, and 4 pursuant to section 654.

The appropriate remedy for section 654 error at the appellate level is to modify the judgment to stay imposition of sentence for the count. (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 131.) We modify the judgment to order punishments stayed on counts 2, 3, and 4 pursuant to section 654.

18

DISPOSITION

The judgment is affirmed as modified. The clerk of the superior court is directed to prepare a corrected abstract of judgment in accordance with the disposition and forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.



O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.